**No. 14141-G**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

**SYLVIA FRIPP,**

*Plaintiff-Appellant,*

V.

**CITY OF ATLANTA, GEORGIA,**

*Defendant-Appellee,*

Appeal from the United States District Court
for the Northern District of Georgia

No. 1:21-cv-02670-CAP

---

**BRIEF OF APPELLANT**

---

Kennon Peebles, Jr.
Law Office of Kennon Peebles, Jr.
3296 Summit Ridge Pkwy, Suite 1720
Duluth, Georgia 30096
Tel. 470-395-4427
Email: kennon@peebleslaw.net

*Attorney for Plaintiff-Appellant
Sylvia Fripp*

**No. 14141-G**
**Fripp v. City of Atlanta, Georgia**
**Certificate of Interested Persons and Corporate Disclosure Statement**

Pursuant to 11th Cir. R. 26.1-1, counsel for Plaintiff Sulvia Fripp hereby certifies that the following persons, firms, and entities have, or may have had, an interest in the outcome of this appeal:

1. City of Atlanta, Georgia, Defendant

2. Edwards, Whitney Bly, Counsel for Defendant

3. Fripp, Sylvia, Plaintiff

4. Greenberg Traurig, LLP, Counsel for Defendant

5. Larkins, III, John K., U.S. Magistrate Judge

6. Lumpkin-Dawson, Mellori, Counsel for Defendant

7. Pannell, Charles A., Judge, Northern District of Georgia

8. Peebles, Jr., Kennon, Counsel for Plaintiff

9. Wilson, Natsha, Counsel for Defendant

No publicly traded company or corporation has an interest in the outcome of this appeal.

Respectfully submitted this 23 day of January, 2024.

/s/ Kennon Peebles, Jr.
Kennon Peebles, Jr.
Attorney for Plaintiff Sylvia Fripp

## Statement Regarding Oral Argument

Plaintiff-Appellant Sylvia Fripp requests that the present appeal be scheduled for oral argument.  Plaintiff contends that oral argument would assist the Court in understanding and deciding the issues in the present case.

# Table Of Contents

**Page**

Certificate of Interested Persons and Corporate Disclosure Statement.C-1

Statement Regarding Oral Argument ............................................................. i

Table of Contents ........................................................................................... ii

Table of Citations……………………………………………………………...v

Jurisdictional Statement ............................................................................. vii

Statement of the Issues ................................................................................... 1

Statement of the Case .................................................................................... 2

Summary of the Argument…………………………………………………..23

Argument…………………………………………………………………….26

I.    The District Court Erred In Granting Summary Judgment Because
      Plaintiff Presented Direct Evidence That Her Supervisor Took
      Adverse Actions Against Her In Retaliation For Her Complaints
      About Sexual Harassment……..……………………………………….……26

      A. Allen Smith stated he wanted to get rid of Plaintiff because she
         complained too much about sexual harassment in a
         January 25, 2018 email to Maya Smith of Human Resources…….…...27

      B. Allen Smith made the same statement in an August 8, 2019
         email to Maya Smith…………………………………………..………..28

C. The Original Notice of Proposed Adverse Action Stated Plaintiff

Should be Terminated For Her Complaints About Sexual

Harassment……………………………………..……………28

II.    The District Court Erred In Granting Summary Judgment Because

Plaintiff Produced Circumstantial Evidence That That Her Supervisor

Took Adverse Actions Against Her In Retaliation For Her Complaints

About Sexual Harassment……………………………….…….…..31

A. Plaintiff Established a Prima Facie Case of Retaliation…………...…31

1. Plaintiff Engaged in Protected Activity……………………...…31

2. Plaintiff Suffered Adverse Employment Actions……..……….…32

3. Plaintiff Showed a Causal Connection Between the Adverse

Employment Actions and Plaintiff's Termination……..…………32

B. Defendant's Proffered Reasons for Its Actions Against Plaintiff

Were Invalid…………………………..………………………..37

1.    Fitness for Duty Exam...………..……………..……………41

2.    Failure to Return FMLA Paperwork…………..……..…………42

C. Defendant's Proffered Reasons for Its Actions Against

Plaintiff Were Pretextual………………………...………………..44

1. Allen Smith could not articulate why a Fitness for Duty

Examination was needed…………………………………………45

2. Allen Smith did not have the authority to order the

    Fitness for Duty Exam…………………………………………46

3. Retaliation was the real reason for the scheduling of the

    Fitness for Duty Exam……………………………...…………47


Conclusion………………………………………………………………..56

Certificate Of Compliance…………………………………………...57

Certificate Of Service…………………………………………..58

## Table of Citations

**Cases**                                                                                 **Page(s)**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)……………………22

Alvearez v. Royal Atl. Dev., Inc., 610 F.3d 1253 (11th Cir. 2010). …………….21

Behrens v. Manatee Cnty., Case No. 8:14-cv-00083-T-27AEP

 (M.D. Fla. Mar 31, 2015)………………………………………………………40

Burlington N. & Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2410-16 (2006)….33

Celotex Corp. v. Catrett, 477  U.S. 317, 323 (1986)…………………………….22

Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991)……………….22

Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1350 (11th Cir. 1999)………..32

Cunningham v. Fla. Credit Union, No. 17-14966 (11th Cir. Feb 20, 2019)…….32

Dickey v. Dollar General Corporation, No. 08-15901. Non-Argument Calendar
(11th Cir. 10/30/2009) (11th Cir. 2009)………………………..………………..27-28

Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005)………………………...…22

Galdamez v. DHL Air Express USA, No. 13-14169 (11th Cir. Aug 25, 2014)...35

Jones v. Gulf Coast Health Care of Del., LLC, 854 F.3d 1261 (11th Cir. 2017)..30

King v. Sec'y, U.S. Dep't of the Army, No. 15-13001 (11th Cir. Jun 15, 2016). 46

Tebo v. City of Debary, No. 18-13819 (11th Cir. Sep 03, 2019)……...………...51

Tolar v. Bradley Arant Boult Cummings, LLP, 997 F.3d 1280, 1289 (11th Cir.
2021)…………………………………………………………………………..31

Turnes v. AmSouth Bank, NA, 36 F.3d 1057, 1061 (11th Cir. 1994)……....……44

**Statutes**

42 U.S.C. § 2000e3(a)……………………………………………………………32

## Jurisdictional Statement

This appeal follows the district court's order granting summary judgment in favor of Defendant on all claims raised by Plaintiff filed on November 16, 2023. [Doc 78.] The District Court filed its Judgment on November 17, 2023. [Doc 79.] The Plaintiff filed her Notice of Appeal on December 14, 2023. [Doc 80.]    The District Court had jurisdiction under 28 U.S.C. § 1331. This court has jurisdiction over this appeal under 28 U.S.C. § 1291.

## <u>STATEMENT OF THE ISSUES</u>

1.     Whether Plaintiff Fripp presented direct evidence of Title VII retaliation so that the district court should have denied summary judgment without having to utilize the *McDonnell-Douglas* framework?

If the Court finds that the Plaintiff failed to present direct evidence of retaliation, then the following issues relate to Plaintiff's circumstantial evidence of retaliation:

2.     Whether the Plaintiff established a prima facie case of Title VII retaliation?

a.     Whether Plaintiff engaged in protected activities?

c.     Whether suffered adverse employment actions?

d.     Whether there is a causal connection between Plaintiff's protected activities and the adverse employment actions?

3.     Whether the Defendant proffered legitimate non-retaliatory reasons for its actions against Plaintiff?

a.     Whether the district court erred in allowing Defendant to proffer the Plaintiff's failure to return FMLA forms as a reason for her termination when the decisionmaker had already decided to terminate Plaintiff's employment beforehand?

4.     Whether Plaintiff offered sufficient evidence that Defendant's

proffered non-retaliatory reasons for its actions were pretextual?

      a.     Whether the district court erred in finding that a jury could not find that the City directed Plaintiff to undergo an unauthorized Fitness for Duty Exam in order to create a reason to fire her.

## **Statement of the Case**

### A.    **Statement of Proceedings**

Plaintiff-Appellant Sylvia Fripp filed her Complaint in the present case on July 2, 2021. (Doc 1.)  The original Complaint alleged the following Counts against the City of Atlanta: Count I – Sex Discrimination under Title VII of the Civil Rights Act of 1964, as amended (hereinafter "Title VII") and 42 U.S.C. § 1983; Count II – Hostile Work Environment under Title VII and 42 U.S.C. § 1983; Count III – Retaliation under Title VII and 42 U.S.C. § 1983; and Count IV – Violation of Fair Labor Standards Act (FLSA).

Defendant City of Atlanta, Georgia executed a Waiver of Service of Summons for the Complaint on July 12, 2021. (Doc 3.)  On July 12, 2021, Plaintiff filed her First Amended Complaint, adding Count V – Invasion of Privacy. (Doc 4.) Defendant executed a Waiver of Service of Summons for the First Amended Complaint on July 28, 2021. (Doc 5.)

Defendant obtained an extension of time to respond to the Complaint and First Amended Complaint through and including October 15, 2021. (Doc 6.) Defendant filed its Motion to Dismiss on October 15, 2021. (Doc 8.)

Plaintiff obtained an extension for Plaintiff to respond to Defendant's Motion, through and including November 8, 2021. (Doc 9.)  On November 8, 2021, Plaintiff filed a Response in Opposition to Defendant's Motion to Dismiss,

(Doc 10), and a Motion for Leave to File a Second Amended Complaint. (Doc 11.)

Defendant obtained an extension of time to file a reply brief and response to Plaintiff's motion to amend the complaint through and including December 6, 2021. (Doc 12.)  On December 6, 2021, Defendant filed a reply brief in support of its motion to dismiss, (Doc 13), and a response in opposition to Plaintiff's motion to amend the Complaint. (Doc 14.)

On March 16, 2022, the Magistrate Court ordered Plaintiff to file a supplemental brief. (Doc 15.)  On March 28, 2022, Plaintiff filed her supplemental brief (Doc 17.)  On April 4, 2022, Defendant filed its response to Plaintiff's supplemental brief.  (Doc 18.)

On June 7, 2022 the Magistrate Court filed its Non-Final Report and Recommendation.  (Doc 20.)  In said Report and Recommendation, the Magistrate Court found that Plaintiff voluntarily abandoned her Title VII and Section 1983 disparate treatment claims and any potential HIPAA claims.  (Doc 20, p. 22.)  The Magistrate Court recommended that Plaintiff be given a chance to amend her Complaint to assert a Title VII hostile work environment claim. (Doc 20, p. 27-28.)  The Magistrate Court recommended that Plaintiffs Section 1983 hostile work environment claims be dismissed.  (Doc 20, p. 42-43.)  The Magistrate Court recommended that Plaintiff be given a chance to replead her

4

Title VII retaliation claims.  (Doc 20, p. 48-49.)  The Magistrate Court

recommended that Plaintiff's Section 1983 retaliation claim be dismissed.  (Doc

20, p. 50-51.)  The Magistrate Court recommended that the Plaintiff's FLSA

Claim proceed.  (Doc 20, p. 57.)  Finally, the Magistrate Court recommended that

Plaintiff's state law invasion of privacy claim be dismissed.  (Doc 20, p. 60.)

On June 21, 2022, Plaintiff filed her Objections to the Non-Final Report

and Recommendation. (Doc 22.)  On June 30, 2022, the District Court overruled

Plaintiff's objections and adopted the Non-Final Report and Recommendation.

(Doc 23.)

On July 25, 2022, Plaintiff filed a Second Amended Complaint. (Doc 25.)

The Second Amended Complaint contained the following Counts: Count I –

Retaliation under Title VII and Count II – Violation of FLSA.  (Doc 25.)

On August 8, 2022, Defendant filed its motion to dismiss Plaintiff's Second

Amended Complaint. (Doc 27.)  On August 21, 2022, Plaintiff responded to

Defendant's motion to dismiss. (Doc 28.)

On September 9, 2022, the Magistrate Court issued a Non-Final Report and

Recommendation that Defendant's motion to dismiss be denied except as to

Plaintiff's Title VII retaliation claims related to her termination of employment

and backpay, raises, and promotional opportunities. (Doc 30, p. 25.)  As to those

claims, the Magistrate Court recommended that they be dismissed without

prejudice and Plaintiff be allowed to request leave to amend the Complaint to re-allege them in the future.  (Doc 30, p 25.)

On September 23, 2022, Plaintiff filed her Objections to the Non-Final Report and Recommendation.  (Doc 32.)  On October 5, 2022, the District Court overruled Plaintiff's objections and adopted the Report and Recommendation. (Doc 33.)  On October 20, 2022, the Defendant filed and Answer to the Second Amended Complaint.  (Doc 34.)

On December 21, 2022, Plaintiff filed a Motion to Leave to file a Third Amended Complaint re-alleging a Title VII retaliation claim based on Plaintiff's termination from employment. (Doc 39.)  On January 4, 2023 Defendant filed its response in opposition to Plaintiff's motion for leave to file a Third Amended Complaint. (Doc 40.)

The Magistrate Court granted the Plaintiff's Motion for Leave to File a Third Amended Complaint on January 25, 2023.  (Doc 42.)  On January 27, 2023, Plaintiff filed her Third Amended Complaint, which contained Count I – Title VII Retaliation and Count II – Violation of FLSA.  (Doc 43.)  The Third Amended Complaint is the operative complaint in the present case.

On August 24, 2023, after the parties had completed discovery, the Defendant filed its Motion for Summary Judgment.  (Doc 65.)  The Plaintiff responded on September 14, 2023. (Doc 71, 72.) The Plaintiff's response

abandoned Count II – Violation of FLSA.  (Doc 71.)

On October 23, 2023, the Magistrate Court issued its Final Report and Recommendation, recommending that Defendant's Motion for Summary Judgment be granted.  (Doc 75.)  On November 6, 2023, Plaintiff filed her Objections to the Final Report and Recommendation. (Doc 77.)  On November 16, 2023, the District Court entered its Order on Motion for Summary Judgment, which overruled Plaintiff's objections and adopted the Final Report and Recommendation.  (Doc 78.)  Plaintiff filed her Notice of Appeal on December 14, 2023.  (Doc 80.)

**B.    Statement of Facts**

During all times relevant to this action, Plaintiff was employed with Defendant and worked in the City's Department of Public Works/Department of Transportation.  The Department of Transportation used to be under the Department of Public Works, but it split off around 2019 and now is its own Department. (**Plaintiff's Exhibit 1 -** Allen Smith depo., p. 8, line 23 – p. 9, line 1.)

Plaintiff was assigned to the Motor Pool on or about May 15, 2015 where she often cross-trained in various areas (Concrete, Bridge Shop,Asphalt, and Motor Pool) within the department. (Doc 43 - Third Amended Complaint, Par 13.)

7

In or around November 2015, Plaintiff complained to Defendant's supervisory officials, including Sylvester Alexander, Manager of Highway and Street Department, Garrett T. Bell, Installation Chief, and John Roberts, Bridge Maintenance Coordinator, that she was being sexually harassed by a male co-worker, Derek Ponder. This was Plaintiff's first sexual harassment complaint against Derek Ponder. (Doc 43, Par 14.)

Plaintiff's first sexual harassment complaint about Derek Ponder were based on Ponder's actions in October 2015. (Id., Par 15.) Derek Ponder's actions that led to the first sexual harassment complaint were as follows:

   a. Derek Ponder kept asking Plaintiff to go out with him at work.

   b. Derek Ponder kept calling Plaintiff on her cell phone asking her to dinner.

   c. Plaintiff kept telling Ponder "No". On several occasions Plaintiff told Ponder that she was not interested in him and did not want to interact with him under any circumstance.

   d. Plaintiff made it clear to Ponder that she was not single. Ponder replied that he understood, but it would not affect him being involved with Plaintiff, because he was not single either.

   e. Plaintiff again told him "NO. I am not interested in you."

f. Ponder refused to take no for an answer, and said Plaintiff would easily crack if he put the pressure toward her.

g. Derek Ponder kept asking Plaintiff to be his "Paymaster". He defined "Paymaster" as a working woman who would give him her whole paycheck.

h. Ponder commented to Plaintiff that he already had one Paymaster and she could be his second.

i. Ponder also liked to use the term "Dip".  He defined "Dip" as him bending a woman over a desk or sink so he can have sex with her.

j. Derek Ponder made it clear that he had gotten away with having sex with the Watershed Supervisor's wife. (Doc 43, Par 15.)

 Defendant did not take the appropriate corrective action to timely investigate or properly address Plaintiff's complaints.  Plaintiff avoided Ponder when possible but Ponder continued to engage in intimidating behavior towards Plaintiff. (Id., Par 16.)

On January 27, 23016, while Plaintiff was driving into the parking lot, Derek Ponder pulled up beside her car, gave her a stare that sent chills up her spine, and smiled. (Id., Par 17.)  On the advice of union steward Joseph Banks, Plaintiff went to Garrett T. Bell, installation chief, to report this matter.  (Id., Par 17.)  Plaintiff informed Mr. Bell that she was tired of Derek Ponder calling her on

her cell phone and asking her out to dinner.  (Id., Par 17.)  Mr. Bell then called

Luther Foster (acting supervisor for concrete) and Derek Ponder into the office.

(Doc 43, Par 17.)  Derek Ponder reached out and touched Ms. Fripp's left

shoulder when he walked in the office.  (Id., Par 17.)  Derek Ponder admitted that

he asked Fripp out to dinner.  (Id., Par 17.)  Ponder also stated "I told her how

beautiful her lips were." (Id., Par 17.)  Mr. Bell then told Ms. Fripp that if Derek

Ponder ever made another statement to her to go to him directly.  (Id., Par 17.)

Then Mr. Bell told Luther Foster to "write this up as coaching".  (Id., Par 17.)

On February 2, 2016, Derek Ponder filed a written Employee Statement

which stated that on January 27, 2016, Ms. Fripp refused an order by Chong Hall

to take a truck out to Edgewood Ave.  This statement was totally false. (Id., Par

18.)

On February 2, 2016, Luther Foster (Acting Supervisor of Concrete) asked

Ms. Plaintiff to work alone with Derek Ponder.  This was a few days after Luther

Foster was in the meeting in which Plaintiff was complaining about Derek Ponder

sexually harassing her. (Id., Par 19.)

On February 3, 2016, Plaintiff met with Angela Addison, Deputy

Commissioner, Lydia Jamison, Labor Relations Commissioner, Yvonne Yancy,

HR Commissioner and complained about Derek Ponder's actions towards her.

Plaintiff stated to the three commissioners that Ponder had sexually harassed her

and created a hostile work environment. (Id., Par 20.)

On February 5, 2016, Plaintiff met with Richard Mendoza, Commissioner, and complained about Derek Ponder's actions towards her. Plaintiff told Mr. Mendoza that that Ponder had sexually harassed her and created a hostile work environment. Mr. Mendoza requested thirty days to investigate the matter. (Doc 43, Par 21.)

On February 5, 2016, Plaintiff also met with Sylvester Alexander, Manager of Highway and Street Department, and inquired about the progress of her sexual harassment complaint against Derek Ponder. (Id., Par 22.) Mr. Alexander stated that he spoke to Ms. Paula McGee and forwarded her sexual harassment statement and statements from Mr. Garrett Bell, Luther Foster, and Derek Ponder to Ms. McGee. (Id., Par 22.) Plaintiff also asked Mr. Alexander to remove her from any job assignments in the Concrete Department to avoid any interactions with Ponder. (Id., Par 22.)

On February 15, 2016, Plaintiff met with Sylvester Alexander, Manager of Highway and Street Department, regarding her request to be removed from the Concrete Department. Mr. Alexander stated that he had a lot to deal with, and requested Plaintiff to give him to the end of the week. (Id., Par 23.)

On February 26, 2016, Plaintiff met with Sylvester Alexander, Manager of Highway and Street Department, regarding her request to be removed from the

Concrete Department.  Mr. Alexander told Plaintiff to give him until the next Monday. (Doc 43, Par 24.)

On March 14, 2016, Plaintiff filed a grievance against Ponder alleging she was working in a hostile work environment and continued to be bullied and harassed by Derek Ponder and Luther Foster.  (Id., Par 25.) This was Plaintiff's third written complaint against Derek Ponder. (Id., Par 25.)  The third written complaint states as follows: "I have gone through the chain of command and nothing has been done to resolve any of my grievances toward Mr. Derek Ponder. I have requested several times to be removed from the Concrete Dept.  Mr. Derek Ponder is influencing Mr. Luther Foster in making numerous false allegations against me working in the Concrete Dept., and they have single [sic] me out.  Mr. Luther Foster continues to try to get me to work alone with Mr. Derek Ponder . . ." (Id., Par 25.)

On or about March 18, 2016, Michael Dodson reassigned Plaintiff to Defendant's Bridge Shop where Plaintiff was the only female employee working with approximately seven (7) male employees. (Id., Par 26.)  On April 29, 2016, Plaintiff injured her knee at work, and took time off from work for treatment, including undergoing surgery, until September 29, 2016. (Id., Par 27.)

While on leave, on or about May 1, 2016, Plaintiff's former legal counsel

12

sent an *Ante Litem Notice* to the City of Atlanta pursuant to O.C.G.A. §36-33-5(b) regarding Plaintiff's claims of sexual harassment against Ponder and the City's failure to properly investigate Plaintiff's complaints or prevent further harassment. (Doc 43, Par 28.)

On or about September 29, 2016, when Plaintiff returned towork on light duty, she was temporarily assigned to the front office in Defendant's Bridge Shop until she was released to full duty in or around February 2017. (Id., Par 29.)  In or around March 2017, Plaintiff continued to be assigned to the Bridge Shop. (Id., Par 30.)

On or about November 9, 2017, Plaintiff sought counseling from the City's Employee Assistance Program (EAP) due to a hostile work environment. (Id., Par 31.)

In or around November 20, 2017, Plaintiff complained in writing to Allen Smith that Victor Price had inappropriately touched her face in a sexual manner while working with him on a job. Other workers witnessed Victor Price do this. (Doc 70-1 - Maya Smith depo., Exhibit 7.)  As a result, Allen Smith reassigned Plaintiff from the field to the administrative building at the Bridge Shop where she performed odd jobs and administrative tasks. (Doc 70-1- Maya Smith depo., Exhibit 7.)

On January 25, 2018, Allen Smith emailed to Maya Smith, "Ms. Fripp

13

informed me last year that she could not work in the concrete section because of a sexual harassment claim she had against an employee.  In addition, Ms. Fripp feels that is she is assigned to asphalt she will be the victim of sexual harassment or misconduct.  Also, Ms. Fripp feels as if she has been bullied and harassed by employees in the bridge section.  Due to this, I am unable to accommodate Ms. Fripp in a working capacity at North Ave." (Doc 70-1 – Maya Smith depo., Exhibit 7.)

On June 15, 2018, Allen Smith emailed to Maya Smith, "I have attached Sylvia Fripp's newest medical documents.  She has been placed on light duty, sedentary status.  I don't have any jobs that she can do that are sedentary."  (Doc 70-1 **-** Maya Smith depo., Exhibit 8.)  However, in his January 25, 2018 email, Allen Smith admitted that in 2017, he "placed Ms. Fripp in the office to assist with administrative tasks."  (Doc 70-1 – Maya Smith depo., Exhibit 7.)

In or around May 2018, Plaintiff filed a second claim for workers' compensation for an injury to her feet that occurred in April 2018 while working in contaminated water. (Doc 66-1 – Fripp depo., Exhibit 7, p. 23-24.) Defendant approved Plaintiff's request for Family and Medical Leave from June 1, 2018 through June 1, 2019. (Doc 66-1 – Fripp depo.**,** Exhibit 6, p. 13-14.)  Plaintiff continued to seek treatment for her medical condition(s), including undergoing a second surgery on or about November 27, 2018, and remained under a doctor's

care. (Doc 66-1 – Fripp depo., Exhibit 6, p. 13-14.)

On August 8, 2019, Allen Smith emailed to Maya Smith, "I am requesting Ms. Fripp be reassigned to the Claire Drive location. I am no longer able to accommodate her at North Ave.  Ms. Fripp has claimed that she has been harassed at multiple sections at North Ave." (Doc 70-1 - Maya Smith depo., Exhibit 9.)

On August 23, 2019, Allen Smith emailed to DeShonda Howard, "Ms. Fripp informed me today that her injury she sustained on a previous worker's comp case is aggravating her again. I informed Ms. Fripp that she would need to go home and contact you for further instruction." (Doc 70-1 - Maya Smith depo., Exhibit 12; COA_FRIPP—000897).

 On September 18, 2019, Allen Smith emailed to DeShonda Howard, "Sylvia stopped by today to give me her newest worker's compensation status form. She has been placed on restricted duty. I informed Sylvia that I could not accommodate her restrictions." (Doc 70-1 – Maya Smith depo., Exhibit 12, COA_FRIPP-000895.)

On October 23, 2019, Allen Smith emailed to Maya Smith, "I have attached Sylvia Fripp's medical document she provided on yesterday, 10-22-19. I informed her that we could not accommodate her restrictions."  (Doc 70-1 - Maya Smith depo., Exhibit 12; COA_FRIPP-000894.)

On November 6, 2019, a co-worker called told Plaintiff to tell Plaintiff that

Derek Ponder was saying that Plaintiff was going to return to work on December 3, 2019. (Doc 66-1 - Fripp Depo., Exhibit 7, p. 24-25.)  The next day, on November 6, 2019, Allen Smith called Plaintiff to ask when she was returning to work.  Thereafter, Plaintiff received a letter stating that she had to return to work on December 3, 2019. (Doc 66-1 - Fripp Depo., Exhibit 7, p. 24-25.)

On December 3, 2019, Sylvia Fripp returned to work and was stationed in the supervisor's office.  Later that week, Derek Ponder came in and tried to make small talk with Mr. Marquis Phelps, who is the Area Supervisor of the Concrete Department.  Plaintiff asked Mr. Phelps why Derek Ponder was in the office.  Mr. Phelps said that he didn't know, because he usually didn't talk to Ponder. Plaintiff then told Mr. Phelps that she did not feel comfortable around Ponder, because Ms. Fripp had filed a HR complaint against Ponder for sexual harassment. (Doc 66-1 - Fripp Depo., Exhibit 7, p. 24-25.)

On January 2, 2020, Plaintiff submitted a written complaint of Derek Ponder sexually harassing her. (Doc 70-1 - Maya Smith depo., Exhibit 6; COA_FRIPP-001769 to COA_FRIPP-001772.)  On January 6, 2020, Allen Smith emailed Plaintiff's complaint to Nia Parker. (Doc 70-1 - Maya Smith depo., Exhibit 6; COA_FRIPP-001769 to COA_FRIPP-001772.)  On January 6, 2020, Nia Parker replied, "I will put some time on the calendar to discuss. I would also like to discuss next steps if the claims are proven to be unfounded as this is one of

16

numerous complaints made by this employee that have not been substantiated."

(Doc 70-1 - Maya Smith depo., Exhibit 6; COA_FRIPP-001768.)

On January 8, 2020, Maya Smith contacted Plaintiff to inform her she had

to attend a Fitness for Duty Examination on January 13, 2020. At that time

Plaintiff told Maya Smith that Plaintiff was currently at the Workers

Compensation doctor receiving a fitness for duty examination. As a result of this

conversation, Maya Smith contacted Director of Enterprise and Risk Management

Jerry De Loach.  (Doc 70-1 - Maya Smith depo., Exhibit 13; COA_FRIPP

000013.) On January 8, 2020, Jerry DeLoach emailed Maya Smith, "Please cancel

the FFD exam scheduled. Ms. Fripp visited Dr. York today, and he will provide

notes from that visit." (Doc 70-1 - Maya Smith depo., Exhibit 18; COA_FRIPP-

001104.)

Doctor York's note issued on January 8, 2020 stated, "May return to work

light duty today based on the FCE recommendations." (Doc 70-1 - Maya Smith

depo., Exhibit 20, Exhibit 21; COA_FRIPP-000803.)  The FCE was the

Functional Capabilities Exam that Plaintiff was undergoing on January 8, 2020.

(Doc 70-1 - Maya Smith depo., Exhibit 22.)  On January 28, 2020, Connie Mabry

contacted Dr. York and asked him to change the work status to return to work

without restrictions. (Doc 70-1 - Maya Smith depo., Exhibit 25; COA_FRIPP-

000794 to COA_FRIPP-000796.)  On January 28, 2020, Dr. York actually

17

changed the work status to "She can return to work 1/9/20 without restrictions. Sorry for any previous confusion." (Doc 70-**1 -** Maya Smith depo., Exhibit 24.)

On February 4, 2020, Maya Smith and Installation Chief Todd Miles met with Plaintiff to tell her she had to attend a Fitness for Duty Examination on February 6, 2020. (Doc 70-1 **-** Maya Smith depo., Exhibit 37; COA_FRIPP000013 to COA_FRIPP000014.)

Atlanta Municipal Ordinance Section 114-380 – Fitness for Duty – provides, "The head of the department with the approval of the commissioner of human resources, shall have the right to direct any employee within such department to be examined by a physician or psychologist to be designated by the city." (Doc 69-1 **-** Kirkwood depo., Exhibit 1.)

At the time Allen Smith directed Plaintiff to attend a Fitness for Duty examination, he was not the head of the department and did not seek permission of the Commissioner of Human Resources. (Doc 67-1 **-** Allen Smith depo., p. 63, line 10- p. 64, line 8.; p. 58, lines 5-20.)  Also, in his deposition, Allen Smith testified he did not know if there would be a benefit to having Plaintiff attend a Fitness for Duty Examination at the same time she was treating with a Workers Compensation doctor. (Doc 67-1**-** Allen Smith depo., p. 54, lines 1-5.)

Defendant's agent in its workers compensation department, Deshonda Howard, has in fact testified that the type of doctor's evaluation that Plaintiff

failed to attend should not have been scheduled for someone treating under workers compensation. (Doc 73-1 - Howard depo., p. 28, line 15 – p. 29, line 14.)

Plaintiff refused to attend the Fitness for Duty Evaluation scheduled on February 6, 2020, telling Maya Smith to contact her Workers Compensation attorney. (Doc 70-1 - Maya Smith depo., p. 57, line 14 – p. 58, line 6.)

On March 25, 2020, Allen Smith sent Maya Smith a draft Notice of Proposed Adverse Action terminating Plaintiff. (Doc 70-1 - Maya Smith depo., Exhibit 26; COA_FRIPP-001140.) After a few revisions, Allen Smith, Cotena Alexander, and Josh Rowan docu-signed a Notice of Proposed Adverse Action proposing to terminate Plaintiff. (Doc 70-1 - Maya Smith depo., Exhibit 28; COA_FRIPP00790.) Under the section entitled Infraction, the docu-signed NPAA cites as reasons for termination Plaintiff's claims of sexual harassment in November 2017 and claims of sexual harassment by the asphalt crew. (Doc 70-1- Maya Smith depo., Exhibit 28; COA_FRIPP00790.)

In 2020, Michael Kirkwood became director of Atlanta's Office of Labor and Employee Relations and stopped Allen Smith from proceeding with the NPAA until an investigation of Plaintiff's January 2, 2020 complaint of sexual harassment could be conducted. (Doc 69-1 - Kirkwood depo., p. 47, line 13 – 48, line 7.) The investigation of Plaintiff's January 2, 2020 complaint of sexual harassment concluded January 26, 2021. (Doc 66-1 - Fripp depo., p. 166, line 22 –

p. 167, line 6; Exhibit 15; COA_FRIPP-001687.)

On February 2, 2021, Maya Smith wrote an email to Jennifer Hicks stating, "The department would like to move forward with the termination of Sylvia Fripp.  We have been dealing with her for some time." (Doc 70-1‑ Maya Smith depo., Exhibit 33.)

On March 5, 2021, Allen Smith sent a Memorandum to Sylvia Fripp regarding Recovery Status.   It states:

> "This memorandum is in regard to your leave of absence from the City of Atlanta. You informed human resources that you tested positive for Covid-19 on 1/10/2021.  According to our records, you have now been on leave since 12/29/2020. The department will no longer be able to keep you whole while your [sic] out of work ill.
>
> Therefore, your available compensatory FFRCA hours are 323.80, your sick time hours are 113.18, and your PTO vacation hours are 230.33.  We need to hear from you regarding your recovery status and your plans and ability to return to work and which leave hours you would like to use. Please respond via email to Allen Smith at allsmith@atlantaga.gov and cc Maya Smith at mpsmith@atlantaga.gov by March 11, 2021."

(Doc 67-1‑ Allen Smith depo., Exhibit 15; COA_FRIPP-001187.)

On March 8, 2021, Plaintiff sent an email to Allen Smith stating she wanted to "Used [sic] my 328 hours and after that my sick leave hours due to my underlying medical condition." (Doc 70-1‑ Maya Smith depo., Exhibit 40; COA_FRIPP-001188.)  Plaintiff attached a physician's note stating that she should be placed on medical leave from January 14, 2021 through July 1, 2021.

(Doc 70-1‑ Maya Smith depo., Exhibit 40; COA_FRIPP-001189.)

After receiving Plaintiff's March 8, 2021 email, Allen Smith, Maya Smith, and Jennifer Hicks made several revisions to the NPAA. (Doc 70-1‑ Maya Smith depo., Exhibits 35, 36.)  On April 5, 2021, Allen Smith docu-signed the final version of the NPAA.  (Doc 70-1 ‑ Maya Smith depo., Exhibit 37.)  On April 8, 2021, Allen Smith forwarded the NPAA to Plaintiff.  (Doc 70-1‑ Maya Smith depo., p. 62, lines 2-20.)

On April 21, 2021, Plaintiff and her undersigned counsel met with Josh Rowan, who was Transportation Commissioner at the time, via Zoom and pointed out to him that the allegations contained in the notice of intention to terminate employment were false.  (Doc 68-1 ‑ Hicks depo., p. 32, lines 19-25; Doc 66-1 ‑ Fripp depo., p. 80; Exhibit 6, Par 81.)   However, on April 27, 2021, Allen Smith terminated Plaintiff's employment anyway.

## C.    Standard of Review

### Summary Judgment

This Court reviews a district court's grant of summary judgment *de novo,* applying the same legal standard as the district court.  Alvearez v. Royal Atl. Dev., Inc., 610 F.3d 1253 (11th Cir. 2010).

A court should grant summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). The movant bears the initial burden of showing that it is entitled to summary judgment. Celotex Corp. v. Catrett, 477  U.S. 317, 323 (1986).

"Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The nonmovant is then required "to go beyond the pleadings" and to present competent evidence in the form of affidavits, answers to interrogatories, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (quotation omitted); see Fed. R. Civ. P. 56(c). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005).

Resolving all doubts in favor of the nonmoving party, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). In evaluating a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." Id. at 255.

<u>**Summary of the Argument**</u>

**I.**    <u>**Summary Judgment Should Have Been Denied as to Plaintiff's Title VII Retaliation Claim, Because Plaintiff Produced Direct Evidence That Her Supervisor Terminated Her Employment In Retaliation For Her Complaints About Sexual Harassment.**</u>

Plaintiff Sylvia Fripp argues that she provided to the Magistrate Court and the District Court direct evidence that Defendant City of Atlanta terminated her employment in retaliation for her complaints about sexual harassment.

Plaintiff's evidence shows that Allen Smith, the decisionmaker in the Plaintiff's firing, stated several times in his emails that he wanted to get rid of Plaintiff because she complained about sexual harassment too much.  Plaintiff's evidence also shows Allen Smith signed a Notice of Proposed Adverse Action that stated Plaintiff's termination was recommended because of her complaints about sexual harassment.

**II.**    <u>**Summary Judgment Should Have Been Denied as to Plaintiff's Title VII Retaliation Claim, Because Plaintiff Produced Sufficient Circumstantial Evidence That Her Supervisor Terminated Her Employment In Retaliation For Her Complaints About Sexual Harassment.**</u>

Plaintiff further argues that she has produced sufficient circumstantial

23

evidence to survive summary judgment. Plaintiff made numerous complaints about sexual harassment to her supervisor Allen Smith. Allen Smith wrote several emails stating that he could not accommodate Plaintiff working under him due to her numerous complaints of sexual harassment. Maya Smith and Nia Parker wrote emails that indicated that they wanted to fire Plaintiff for complaining about sexual harassment too much.

Plaintiff was, in fact fired. Decisionmaker Allen Smith cited two reasons for her termination: (a) Plaintiff's failure to attend a Fitness for Duty Exam and (b) Plaintiff's failure to return FMLA paperwork.

Decisionmaker Allen Smith was not authorized to order the Fitness for Duty Exam, and he ordered Plaintiff to appear for the Fitness for Duty Exam at a time she was actively treating with a workers' compensation physician. No employee of the City of Atlanta is ever asked to appear for a Fitness for Duty Exam while actively treating for an injury covered by workers' compensation.

The fast that the City was trying to use Fitness for Duty Exam as a pretext to terminate Plaintiff is clear from (a) the statements of Allen Smith, (b) the statements of HR Director Nia Parker and HR Manager Maya Smith, (c) the fact that the Fitness for Duty Exam was unauthorized, (d) the fact that the Fitness for Duty Exam was only scheduled after Plaintiff had submitted her January 2, 2020 sexual harassment complaint about Derek Ponder, (e) the temporal proximity

24

between the chain of events leading up to Plaintiff's termination, (f) the fact that the City tried to use Plaintiff's failure to return FMLA paperwork as a reason for termination, (g) the fact the Allen Smith refused to assign Plaintiff to light duty work, and (h) the fact that Allen Smith interfered with Plaintiff's workers' compensation case.

The FMLA paperwork was given to Plaintiff after the decision to fire her had already been made, and therefore the Magistrate Court and District Court erred in considering that as a valid non-retaliatory reason for Plaintiff's termination of employment.  This Court's precedent indicates that an attempt to use an event that happened after the decision to terminate an employee as an excuse for the termination can indicate pretext.

## Argument

**I.** **The District Court Erred In Granting Summary Judgment Because Plaintiff Presented Direct Evidence That Her Supervisor Took Adverse Actions Against Her In Retaliation For Her Complaints About Sexual Harassment.**

The Plaintiff produced direct evidence of retaliation in the present case.

In the Final Report and Recommendation [Doc. 75], the Magistrate Court found that Plaintiff had not presented direct evidence of retaliation. [Doc 75, p. 26.] The District Court erred in adopting this finding.

This Court has held:

A plaintiff can establish a retaliation claim through either direct or circumstantial evidence.4 Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1358 (11th Cir. 1999). Direct evidence is defined as " evidence, which, if believed, proves the existence of a fact in issue without inference or presumption. Evidence that only suggests discrimination [or retaliation], or that is subject to more than one interpretation, does not constitute direct evidence." Merritt, 120 F.3d at 1189.

Proceeding with direct evidence has been referred to as the "traditional framework" for proving discrimination and requires the plaintiff produce evidence from which the trier of fact could conclude, more likely than not, that an adverse employment decision was made based on a protected characteristic. See Wright v. Southland Corp., 187 F.3d 1287, 1289-90 (11th Cir. 1999). If the plaintiff is successful in carrying this initial burden, the trier of fact is required to consider all of the evidence and determine whether a protected personal characteristic was the cause of an adverse employment decision vel non. Id.; see also Merritt v. Dillard Paper Co., 120 F.3d 1181, 1189 (11th Cir. 1997) ("Where the non-movant presents direct evidence that, if believed by the jury, would be sufficient to win at trial, summary judgment is not appropriate even where the movant presents

conflicting evidence.") (citations omitted).

Dickey v. Dollar General Corporation, No. 08-15901. Non-Argument Calendar
(11th Cir. 10/30/2009) (11th Cir. 2009).

The Magistrate Court stated that "for a comment to be direct evidence . . . it
must typically be made (1) by the decisionmaker responsible for the alleged
discriminatory act, (2) in the context of the challenged decision, and (3) in
temporal proximity to the employment decision."  [Doc 75, p. 24].

Plaintiff's evidence shows that Allen Smith, the decisionmaker in the
Plaintiff's firing, stated several times in his emails that he wanted to get rid of
Plaintiff because she complained about sexual harassment too much.  Plaintiff's
evidence also shows Allen Smith signed a Notice of Proposed Adverse Action that
stated Plaintiff's termination was recommended because of her complaints about
sexual harassment.

**A.** **Allen Smith stated he wanted to get rid of Plaintiff because she
complained too much about sexual harassment in a January 25,
2018 email to Maya Smith of Human Resources.**

On January 25, 2018, Allen Smith emailed to Maya Smith, "Ms. Fripp
informed me last year that she could not work in the concrete section because of a
sexual harassment claim she had against an employee.  In addition, Ms. Fripp feels
that is she is assigned to asphalt she will be the victim of sexual harassment or

27

misconduct.  Also, Ms. Fripp feels as if she has been bullied and harassed by employees in the bridge section.  **Due to this, I am unable to accommodate Ms. Fripp in a working capacity at North Ave**." (Doc 70-1 – Maya Smith depo., Exhibit 7.)

### B.      Allen Smith made the same statement in an August 8, 2019 email to Maya Smith.

On August 8, 2019, Allen Smith emailed to Maya Smith, "I am requesting Ms. Fripp be reassigned to the Claire Drive location. **I am no longer able to accommodate her at North Ave.  Ms. Fripp has claimed that she has been harassed at multiple sections at North Ave.**" (Doc 70-1 - Maya Smith depo., Exhibit 9.)

### C.      The Original Notice of Proposed Adverse Action Stated Plaintiff Should be Terminated For Her Complaints About Sexual Harassment

On March 25, 2020, Allen Smith sent Maya Smith a draft Notice of Proposed Adverse Action terminating Plaintiff.  (Doc 70-1 - Maya Smith depo., Exhibit 26; COA_FRIPP-001140.)  After a few revisions, Allen Smith, Cotena Alexander, and Josh Rowan docu-signed a Notice of Proposed Adverse Action proposing to terminate Plaintiff.  (Doc 70-1 - Maya Smith depo., Exhibit 28; COA_FRIPP00790**.**)   **Under the section entitled Infraction, the docu-signed**

28

**NPAA cites Plaintiff's claims of sexual harassment in November 2017 and claims of sexual harassment by the asphalt crew.** (Doc 70-1 - Maya Smith depo., Exhibit 28; COA_FRIPP00790.)

The docu-signed NPAA states:

**"Proposed Action: Dismissal.**

. . . .

**Infraction: In November of 2017, Sylvia Fripp (Equipment Operator II) submitted a statement claiming harassment, discrimination, and bullying by other employees. In December of 2017, HR Manager Paula McGhee determined that the claims could not be substantiated. Manager Allen Smith informed Ms. Fripp she would be reassigned to the asphalt section to place space between her and the employees she felt were harassing her. Ms. Fripp said that she could not work in the asphalt or concrete section because of sexual harassment.** This information was sent to HR Manager Maya Smith and Labor Relations. . . . .

**Ms. Fripp said she was not going to work in asphalt because of sexual harassment.** In September of 2019, Ms. Fripp brought medical documents stating she needed to be placed on light duty. In December 2019, DeShonda Howard determined that Ms. Fripp was released to full duty. Sylvia Fripp was released to full duty from worker's comp on 11/1/19. However, Ms. Fripp returned to work on 12/3/19 wearing a leg brace and cane. Due to this, Ms. Fripp was unable to perform the duties of her job function Equipment Operator II. Due to Ms. Fripp's claim of a medical condition preventing her from performing her assigned duties, Human Resources began gathering the necessary Americans with Disabilities Act ("ADA") information and coordinating a fit for duty assessment to evaluate Ms. Fripp's needs.

(Doc 70-1 - Maya Smith depo., Exhibit 28; COA_FRIPP00790.)

This is the clearest direct evidence that Plaintiff was being fired for complaining about sexual harassment too much. This NPAA was (1) made by

Allen Smith, the decisionmaker, (2) made in the context of the employment

decision, and (3) made at the time the decision was made to terminate Plaintiff's

employment.  This is direct evidence of retaliation.

> Direct evidence "reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.' " Wilson v. B/E Aerospace, Inc ., 376 F.3d 1079, 1086 (11th Cir. 2004) (quoting Damon v. Fleming Supermarkets of Fla., Inc. , 196 F.3d 1354, 1358 (11th Cir. 1999) (internal quotation marks omitted). If believed, direct evidence "proves [the] existence of [a] fact without inference or presumption." Id . (quoting Burrell v. Bd. of Trs. of Ga. Military Coll. , 125 F.3d 1390, 1393 (11th Cir. 1997) ) For that reason, " 'only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of' some impermissible factor constitute direct evidence of discrimination." Id. (quoting Rojas v. Florida , 285 F.3d 1339, 1342 n. 2 (11th Cir. 2002) )...

Jones v. Gulf Coast Health Care of Del., LLC, 854 F.3d 1261 (11th Cir. 2017).

## II. The District Court Erred In Granting Summary Judgment Because Plaintiff Produced Circumstantial Evidence That That Her Supervisor Took Adverse Actions Against Her In Retaliation For Her Complaints About Sexual Harassment.

In a Title VII retaliation case, if a Plaintiff relies on circumstantial evidence, the court analyzes the case under the *McDonnell Douglas* framework.

Under the *McDonnell Douglas* framework, first, the employee must establish a prima facie case of retaliation by proving that she engaged in statutorily protected conduct; she suffered an adverse employment action; and a causal relation exists between the two events. Tolar v. Bradley Arant Boult Cummings, LLP, 997 F.3d 1280, 1289 (11th Cir. 2021). If an employee establishes a prima facie case, the employer may proffer a "legitimate, nonretaliatory reason" for the adverse action. Id. If the employer does so, the employee must prove that the employer's proffered reason was a pretext for retaliation. Id.

### A. Plaintiff Established A Prima Facie Case of Retaliation

The Magistrate Court found that Plaintiff failed to establish a prima facie case of retaliation. [Doc. 75, Page 37.] The Magistrate Court stated, "In the end, Plaintiff has not met her burden of demonstrating a causal connection between protected activity and her discharge from employment." [Id.] The Magistrate Court erred in so finding.

31

A prima facie case requires a showing that "(1) the employee was engaged in statutorily protected activity; (2) the employee suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." Furcron v. Mail Centers Plus, LLC, 843 F.3d 1295, 1310 (11th Cir. 2016). As with a discrimination claim, "[o]nce a prima facie case has been established, the employer may come forward with legitimate reasons for the employment action to negate the inference of retaliation." Id. (quoting Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993) (alteration omitted)). And yes, if the employer does so, the burden of production then reverts to the employee to introduce evidence that the asserted reason is "pretextual." Id. at 1310-11.

Cunningham v. Fla. Credit Union, No. 17-14966 (11th Cir. Feb 20, 2019).

## 1.     **Plaintiff Engaged in Protected Activity**

In Title VII, Congress created two types of activities that are protected against retaliation. *See* 42 U.S.C. § 2000e3(a). An employer may not retaliate against an employee because, first, "he has opposed any practice made an unlawful employment practice by this subchapter" (the opposition clause), or second, "he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter" (the participation clause). Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1350 (11th Cir. 1999) (quoting 42 U.S.C. § 2000e3(a)).

In the district court, Defendant did not dispute that Plaintiff engaged in protected activity.

## 2.  **Plaintiff Suffered Adverse Employment Actions**

"'[T]he type of employer conduct considered actionable [in the retaliation

32

context] has been broadened from that which adversely affects the plaintiff's conditions of employment or employment status to that which has a materially adverse effect on the plaintiff, irrespective of whether it is employment or workplace-related.'..." Burlington N. & Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2410-16 (2006).  To constitute a materially adverse action, the employer's actions must be "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co., 126 S. Ct. at 2409.

Plaintiff's evidence showed that she suffered the following adverse employment actions (a) her termination from employment with the City; (b) her supervisor's refusal to assign her to light duty work; and (c) the City's interference with her workers' compensation claim.

### a.    Plaintiff's Termination from Employment

Defendant conceded that Plaintiff's termination would qualify as an adverse employment action.

In the present case, Allen Smith did not even have the authority to order the Fitness for Duty examination that he claims he fired Plaintiff for not attending.

Atlanta Municipal Ordinance Section 114-380 – Fitness for Duty – provides, "The head of the department with the approval of the commissioner of human resources, shall have the right to direct any employee within such department to be

examined by a physician or psychologist to be designated by the city." (Doc 69-1-Kirkwood depo., Exhibit 1.)

At the time Allen Smith directed Plaintiff to attend a Fitness for Duty examination, he was not the head of the department and did not seek permission of the Commissioner of Human Resources. (Doc 67-1 - Allen Smith depo., p. 63, line 10- p. 64, line 8.; p. 58, lines 5-20.)  Also, in his deposition, Allen Smith testified he did not know if there would be a benefit to having Plaintiff attend a Fitness for Duty Examination at the same time she was treating with a Workers Compensation doctor. (Doc 67-1 - Allen Smith depo., p. 54, lines 1-5.)

The Magistrate Court erred in finding that Allen Smith could have honestly believed that he had the authority to order the Fitness for Duty Exam. (Doc 75, p. 40.)  This is because to make such a finding, the Magistrate Court improperly weighed the evidence most strongly in favor of the Defendant instead of the non-moving Plaintiff.

There is nothing in the record which would support Allen Smith having such a belief.  The City Ordinance is clear as to the requirement that the Commissioner of Human Resources approve a Fitness for Duty Exam, (Doc 69-1 - Kirkwood depo., Exhibit 1), and no other City worker has been scheduled for a Fitness for Duty Exam while actively treating on workers' compensation.  (Doc 73-1 - Howard depo., p. 28, line 15 – p. 29, line 14.)

**b.**     **<u>Allen Smith's Refusal to Allow Plaintiff to Perform Light
Duty Work.</u>**

Allen Smith refused to accommodate Plaintiff with light duty work on
January 25, 2018, (Maya Smith depo., Exhibit 7), June 15, 2018, (Maya Smith
depo., Exhibit 7), August 23, 2019, (Maya Smith depo., Exhibit 12;
COA_FRIPP—000897), September 18, 2019, (Maya Smith depo., Exhibit 12,
COA_FRIPP-000895), and October 23, 2019. (Maya Smith depo., Exhibit 12;
COA_FRIPP-000894.)

This Court has held that for purposes of a Title VII retaliation claim, "we
concluded in Gate Gourmet that the denial of light duty work was an adverse
employment action sufficient to make out a prima facie case of retaliation..."
<u>Galdamez v. DHL Air Express USA</u>, No. 13-14169 (11th Cir. Aug 25, 2014).

**c.**     **<u>Interference with Plaintiff's Workers Compensation Claim.</u>**

The Magistrate Court found, "Plaintiff presents no evidence whatsoever that
Defendant did anything to interfere with any workers' compensation benefit to
which she was entitled." (Doc. 75, p. 31.)

However, the evidence clearly shows that Allen Smith and company did
actively interfere with Plaintiff's Workers Compensation case.

On January 8, 2020, Maya Smith contacted Plaintiff to inform her she had to
attend a Fitness for Duty Examination on January 13, 2020. At that time Plaintiff

told Maya Smith that Plaintiff was currently at the Workers Compensation doctor receiving a fitness for duty examination. As a result of this conversation, Maya Smith contacted Director of Enterprise and Risk Management Jerry De Loach. (Doc 70-1 - Maya Smith depo., Exhibit 13; COA_FRIPP 000013.) On January 8, 2020, Jerry DeLoach emailed Maya Smith, "Please cancel the FFD exam scheduled. Ms. Fripp visited Dr. York today, and he will provide notes from that visit." (Doc 70-1 - Maya Smith depo., Exhibit 18; COA_FRIPP-001104.)

Doctor York's note issued on January 8, 2020 stated, "May return to work light duty today based on the FCE recommendations." (Doc 70-1 - Maya Smith depo., Exhibit 20, Exhibit 21; COA_FRIPP-000803.)  The FCE was the Functional Capabilities Exam that Plaintiff was undergoing on January 8, 2020. (Doc 70-1 - Maya Smith depo., Exhibit 22.)  On January 28, 2020, Connie Mabry contacted Dr. York and asked him to change the work status to return to work without restrictions. (Doc 70-1 - Maya Smith depo., Exhibit 25; COA_FRIPP-000794 to COA_FRIPP-000796.)  On January 28, 2020, Dr. York actually changed the work status to "She can return to work 1/9/20 without restrictions. Sorry for any previous confusion." (Doc 70-1 - Maya Smith depo., Exhibit 24.)

This Court has found that requiring a worker to submit to a fitness for duty exam can be considered an adverse action for a Title VII retaliation claim.

**3.      Plaintiff Showed A Causal Connection Between the Adverse Employment Actions and Plaintiff's Termination**

It is clear that the reason for Plaintiff's termination was her complaints about sexual harassment. This conclusion is based on (a) The statements of Allen Smith, Maya Smith, and Nia Parker, and (b) temporal proximity between Plaintiff's January 2020 sexual harassment complaint and the decision to terminate Plaintiff.

**a.      The Statements of Allen Smith and Others**

On January 2, 2020, Plaintiff submitted a written complaint of Derek Ponder sexually harassing her. (Doc 70-1 - Maya Smith depo., Exhibit 6; COA_FRIPP-001769 to COA_FRIPP-001772.)   On January 6, 2020, Allen Smith, who had been wanting to get rid of Plaintiff for complaining about sexual harassment too much, emailed Plaintiff's complaint to Nia Parker. (Doc 70-1 - Maya Smith depo., Exhibit 6; COA_FRIPP-001769 to COA_FRIPP-001772.)

On January 6, 2020, Nia Parker replied, "I will put some time on the calendar to discuss**. I would also like to discuss next steps if the claims are proven to be unfounded as this is one of numerous complaints made by this employee that have not been substantiated**." (Doc 70-1- Maya Smith depo., Exhibit 6; COA_FRIPP-001768.)

On January 8, 2020, **two days after Nia Parker's email**, Maya Smith contacted Plaintiff to inform her she had to attend a Fitness for Duty Examination

on January 13, 2020. At that time Plaintiff told Maya Smith that Plaintiff was currently at the Workers Compensation doctor receiving a fitness for duty examination. As a result of this conversation, Maya Smith contacted Director of Enterprise and Risk Management Jerry De Loach.  (Doc 70-1 - Maya Smith depo., Exhibit 13; COA_FRIPP 000013.) On January 8, 2020, Jerry DeLoach emailed Maya Smith, "Please cancel the FFD exam scheduled. Ms. Fripp visited Dr. York today, and he will provide notes from that visit." (Doc 70-1 - Maya Smith depo., Exhibit 18; COA_FRIPP-001104.)

Doctor York's note issued on January 8, 2020 stated, "May return to work light duty today based on the FCE recommendations." (Doc 70-1 - Maya Smith depo., Exhibit 20, Exhibit 21; COA_FRIPP-000803.)  The FCE was the Functional Capabilities Exam that Plaintiff was undergoing on January 8, 2020. (Doc 70-1 - Maya Smith depo., Exhibit 22.)  On January 28, 2020, Connie Mabry contacted Dr. York and asked him to change the work status to return to work without restrictions. (Doc 70-1 - Maya Smith depo., Exhibit 25; COA_FRIPP-000794 to COA_FRIPP-000796.)  On January 28, 2020, Dr. York actually changed the work status to "She can return to work 1/9/20 without restrictions. Sorry for any previous confusion." (Doc 70-1- Maya Smith depo., Exhibit 24.)

On February 4, 2020, **just five days after Dr. York changed the work status,** Maya Smith and Installation Chief Todd Miles met with Plaintiff to tell her

she had to attend a Fitness for Duty Examination on February 6, 2020. (Doc 70-1 -
Maya Smith depo., Exhibit 37; COA_FRIPP000013 to COA_FRIPP000014.)
Plaintiff refused to attend the Fitness for Duty Evaluation scheduled on February 6,
2020, telling Maya Smith to contact her Workers Compensation attorney. (Doc 70-
1 - Maya Smith depo., p. 57, line 14 – p. 58, line 6.

On March 25, 2020, Allen Smith sent Maya Smith a draft Notice of
Proposed Adverse Action terminating Plaintiff.  (Doc 70-1- Maya Smith depo.,
Exhibit 26; COA_FRIPP-001140.)  After a few revisions, Allen Smith, Cotena
Alexander, and Josh Rowan docu-signed a Notice of Proposed Adverse Action
proposing to terminate Plaintiff.  (Doc 70-1 - Maya Smith depo., Exhibit 28;
COA_FRIPP00790.)  **Under the section entitled Infraction, in addition to
citing Plaintiff's failure to attend the Fitness for Duty Exam, the docu-signed
NPAA cites Plaintiff's claims of sexual harassment in November 2017 and
claims of sexual harassment by the asphalt crew**.  (Doc 70-1 - Maya Smith
depo., Exhibit 28; COA_FRIPP00790.)

The fact that the docu-signed NPAA mentioned Plaintiff's claims of sexual
harassment as one of the "Infractions" is clear evidence that Defendant fired
Plaintiff in retaliation for the same.

### b    Temporal Proximity

Further, the March 25, 2020 NPAA was in close proximity to Plaintiff's

January 2, 2020 written complaint about Derek Ponder sexually harassing her.  The delay between that letter and the NPAA was caused by Allen and Maya Smith's attempts to have Plaintiff take the unauthorized Fitness for Duty Exam.

> An ultimate adverse action can be linked to temporally distant protected expression if there is a chain of intervening retaliatory acts between the two. See Bass v. Bd. of Cnty. Comm'rs, Orange Cnty., Fla., 256 F.3d 1095, 1117-19 (11th Cir. 2001) (overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)).

Behrens v. Manatee Cnty., Case No. 8:14-cv-00083-T-27AEP (M.D. Fla. Mar 31, 2015).

Plaintiff's termination was delayed until 2021, because Michael Kirkwood became director of Atlanta's Office of Labor and Employee Relations and stopped Allen Smith from proceeding with the NPAA until an investigation of Plaintiff's January 2, 2020 complaint of sexual harassment could be conducted. (Doc 69-1 - Kirkwood depo., p. 47, line 13 – 48, line 7.)   The investigation of Plaintiff's January 2, 2020 complaint of sexual harassment concluded January 26, 2021. (Doc 66-1 - Fripp depo., p. 166, line 22 – p. 167, line 6; Exhibit 15; COA_FRIPP-001687.)  A few days later, Defendant resumed the process of firing Plaintiff.

Reviewing this evidence in a light most favorable to Plaintiff as the non-moving party, Plaintiff did establish a prima facie case of retaliatory firing.

**B.**  **Defendant's Proffered Reasons for Its Adverse Actions Are Invalid.**

Defendant proffered two reasons for terminating Plaintiff's employment: (1) Plaintiff failed to attend the Fitness for Duty Examination and (2) Plaintiff filed to fill out FMLA paperwork.

**1.**  **Fitness for Duty Examination**

Plaintiff's failure to attend an unauthorized Fitness for Duty Exam cannot be a valid reason for her termination.  Atlanta Municipal Ordinance Section 114-380 – Fitness for Duty – provides, "The head of the department with the approval of the commissioner of human resources, shall have the right to direct any employee within such department to be examined by a physician or psychologist to be designated by the city." (Doc 69-1‐ Kirkwood depo., Exhibit 1.)

At the time Allen Smith directed Plaintiff to attend a Fitness for Duty examination, he was not the head of the department and did not seek permission of the Commissioner of Human Resources. (Doc 67-1 ‐ Allen Smith depo., p. 63, line 10- p. 64, line 8.; p. 58, lines 5-20.)  Also, in his deposition, Allen Smith testified he did not know if there would be a benefit to having Plaintiff attend a Fitness for Duty Examination at the same time she was treating with a Workers Compensation doctor. (Doc 67-1 ‐ Allen Smith depo., p. 54, lines 1-5.)

41

## 2.    Failure to Return FMLA Paperwork

The Magistrate Court allowed the City to use Plaintiff's failure to return

FMLA paperwork as an additional reason she was fired even though that occurred

after the City had made a decision to fire her.  [Doc. 75, Page 42.]

On February 2, 2021, Maya Smith wrote an email to Jennifer Hicks stating,

"The department would like to move forward with the termination of Sylvia Fripp.

We have been dealing with her for some time." (Doc 70-1 - Maya Smith depo.,

Exhibit 33.)

On March 5, 2021, Allen Smith sent a Memorandum to Sylvia Fripp

regarding Recovery Status.   It states:

"This memorandum is in regard to your leave of absence from the City of
Atlanta. You informed human resources that you tested positive for Covid-19 on
1/10/2021.  According to our records, you have now been on leave since
12/29/2020. The department will no longer be able to keep you whole while your
[sic] out of work ill.

Therefore, your available compensatory FFRCA hours are 323.80, your sick
time hours are 113.18, and your PTO vacation hours are 230.33.  We need to
hear from you regarding your recovery status and your plans and ability to
return to work and which leave hours you would like to use.  Please respond
via email to Allen Smith at allsmith@atlantaga.gov and cc Maya Smith at
mpsmith@atlantaga.gov by March 11, 2021."

(Doc 67-1 - Allen Smith depo., Exhibit 15; COA_FRIPP-001187.)

On March 8, 2021, Plaintiff sent an email to Allen Smith stating she wanted

to "Used [sic] my 328 hours and after that my sick leave hours due to my

underlying medical condition." (Doc 70-1 - Maya Smith depo., Exhibit 40;

COA_FRIPP-001188.)  Plaintiff attached a physician's note stating that she should be placed on medical leave from January 14, 2021 through July 1, 2021. (Doc 70-1 - Maya Smith depo., Exhibit 40; COA_FRIPP-001189.)

When repeatedly asked why Plaintiff, who had COVID at the time, could not use her FFRCA hours, sick hours, or vacation hours every City representative's reply has been "To protect her job, if eligible, Plaintiff would have needed to apply for and be approved for FMLA leave to be absent from work from January 2021 through July 2021." (Doc 68-1 - Hicks Dep. 23:5-25, 24:3-19.

The fact is that there is no such requirement.  The City's ordinances regarding leave are attached to Michael Kirkwood's Deposition as Exhibit 4.  Section 114-415 deals with Annual Leave and Section 114-416 deals with Sick Leave.  Neither section requires FMLA approval. (Doc 69-1 - Kirkwood depo., Exhibit 4, Sections 114-415 and 114-416.)

However, the Court does not even need to consider the fact that the City is making regulations up.  The fact is that on February 2, 2021, Maya Smith wrote an email to Jennifer Hicks stating, "The department would like to move forward with the termination of Sylvia Fripp.  We have been dealing with her for some time." (Doc 70-1 - Maya Smith depo., Exhibit 33.)

Therefore, anything that happened after February 2, 2021, **such as Plaintiff's failure to return paperwork,** cannot be used by the City as a reason

for the Plaintiff's employment being terminated.

This Court has held:

"Although . . . the employer need not prove it was actually motivated by the proffered reason, Burdine clearly does not relieve the employer from producing a reason that was available to it at the time of the decision's making," so "an employer may not satisfy its burden of production by offering a justification which the employer either did not know or did not consider at the time the decision was made."

Turnes v. AmSouth Bank, NA, 36 F.3d 1057, 1061 (11th Cir. 1994).

The Magistrate Court and District Court erred in allowing Defendant to proffer the Plaintiff's failure to return FMLA paperwork as a reason for Plaintiff's termination.

### C.    Defendant's Proffered Reasons for Its Actions Against Plaintiff Were Pretextual.

Although Defendant offered two reasons for terminating employment, the only reason that Defendant may rely on is Plaintiff's failure to attend the Fitness for Duty Exam.  As discussed above, the Plaintiff's failure to return FMLA paperwork arose after the decision to terminate Plaintiff's employment had been made.  Turnes v. AmSouth Bank, NA, 36 F.3d 1057, 1061 (11th Cir. 1994)( "[A]n employer may not satisfy its burden of production by offering a justification which

the employer either did not know or did not consider at the time the decision was made.")

The scheduling of the Fitness for Duty Exam was pretextual both because there was no valid reason for said exam and because it was scheduled in violation of the City's ordinances.

## 1. __Allen Smith could not articulate why a Fitness for Duty Examination was needed.__

"An employer's shifting and inconsistent explanations may be evidence of pretext. *Cleveland v. Home Shopping Network, Inc*., 369 F.3d 1189, 1194-95 (11th Cir. 2004)." Thomas v. Steris Corp., No. 19-13942 (11th Cir. Jun 30, 2020)

In his deposition, Allen Smith testified he did not know if there would be a benefit to having Plaintiff attend a Fitness for Duty Examination at the same time she was treating with a Workers Compensation doctor. (Doc 67-1 - Allen Smith depo., p. 54, lines 1-5.) Defendant's agent in its workers compensation department, Deshonda Howard, in fact testified that the type of doctor's evaluation that Plaintiff failed to attend should not have been scheduled for someone treating under workers compensation.  (Doc 73-1- Howard depo., p. 28, line 15 – p. 29, line 14.)

## 2   Allen Smith did not have the authority to order the Fitness for Duty Exam.

"[A] failure to follow established policies can be evidence of pretext..." King v. Sec'y, U.S. Dep't of the Army, No. 15-13001 (11th Cir. Jun 15, 2016).

"An asserted "work rule" violation may be pretextual if the plaintiff proffers evidence that he did not actually violate the rule or, if he violated the rule, other employees who committed similar violations were not similarly treated." Damon v. Fleming Supermarkets of Florida, 196 F.3d 1354, 1363 (11th Cir. 1999).

In the present case, Allen Smith did not even have the authority to order the Fitness for Duty examination that he claims he fired Plaintiff for not attending.

Atlanta Municipal Ordinance Section 114-380 – Fitness for Duty – provides, "The head of the department with the approval of the commissioner of human resources, shall have the right to direct any employee within such department to be examined by a physician or psychologist to be designated by the city." (Doc 69-1- Kirkwood depo., Exhibit 1.)

At the time Allen Smith directed Plaintiff to attend a Fitness for Duty examination, he was not the head of the department and did not seek permission of the Commissioner of Human Resources. (Doc 67-1 - Allen Smith depo., p. 63, line 10- p. 64, line 8.; p. 58, lines 5-20.)  Also, in his deposition, Allen Smith testified he did not know if there would be a benefit to having Plaintiff attend a Fitness for

Duty Examination at the same time she was treating with a Workers Compensation doctor. (Doc 67-1 ‑ Allen Smith depo., p. 54, lines 1-5.)

The Magistrate Court erred in finding that Allen Smith could have honestly believed that he had the authority to order the Fitness for Duty Exam. (Doc 75, p. 40.)  This is because to make such a finding, the Magistrate Court improperly weighed the evidence most strongly in favor of the Defendant instead of the non-moving Plaintiff.

There is nothing in the record which would support Allen Smith having such a belief.  The City Ordinance is clear as to the requirement that the Commissioner of Human Resources approve a Fitness for Duty Exam, (Doc 69-1 ‑ Kirkwood depo., Exhibit 1), and no other City worker has been scheduled for a Fitness for Duty Exam while actively treating on workers' compensation.  (Doc 73-1 - Howard depo., p. 28, line 15 – p. 29, line 14.)

### 3.   Retaliation was the real reason for the scheduling of the Fitness for Duty Exam.

The Fitness for Duty Exam was only scheduled after Plaintiff had submitted her January 2, 2020 sexual harassment complaint about Derek Ponder.  Plaintiff had been back at work since December 3, 2019, a whole month, before anyone tried to schedule a Fitness for Duty Exam.  (Doc 66-1 ‑ Fripp Depo., Exhibit 7, p. 24-25.)

The real reason Allen Smith wanted Plaintiff terminated was that she complained about sexual harassment too much.

Several pieces of evidence lead to this conclusion. They are: (i) Allen Smith's statements; (ii) statements of Maya Smith and Nia Parker; (iii) the fact that Allen Smith cited the failure to return the FMLA documents as a reason for Plaintiff's termination; (iv) Allen Smith's failure to follow the City Ordinances; and (v) the timing of the chain of events that led to the Plaintiff's termination; (vi) Allen Smith's refusal to assign Plaintiff to light duty, and (vii) Allen Smith's interference with Plaintiff's workers' compensation claim.

### (i)    Allen Smith's Statements

Compare Allen Smith's January 25, 2018 email to Maya Smith:

"Ms. Fripp informed me last year that she could not work in the concrete section because of a sexual harassment claim she had against an employee. In addition, Ms. Fripp feels that is she is assigned to asphalt she will be the victim of sexual harassment or misconduct. Also, Ms. Fripp feels as if she has been bullied and harassed by employees in the bridge section. **Due to this, I am unable to accommodate Ms. Fripp in a working capacity at North Ave."**

(Doc 70-1 – Maya Smith depo., Exhibit 7),

with the Notice of Proposed Adverse Action docu-signed by Allen Smith, Cotena Alexander, and Josh Rowan:

"**Infraction: In November of 2017, Sylvia Fripp (Equipment Operator II) submitted a statement claiming harassment, discrimination, and bullying by other employees. In December of 2017, HR Manager Paula McGhee determined that the claims could not be substantiated. Manager Allen Smith informed Ms. Fripp she would be reassigned to the asphalt section to place space between her and the employees she felt were harassing her.  Ms. Fripp said that she could not work in the asphalt or concrete section because of sexual harassment.**  This information was sent to HR Manager Maya Smith and Labor Relations."

(Doc 70-1 **-** Maya Smith depo., Exhibit 28; COA_FRIPP00790.)

Under the section entitled Infraction, the docu-signed NPAA basically copies the January 25, 2018 email.  (Doc 70-1 **-** Maya Smith depo., Exhibit 28; COA_FRIPP00790.)   This is the best evidence of Allen Smith's actual intentions.

"A decisionmaker's statement not amounting to direct evidence of discrimination may constitute "probative circumstantial evidence" of discrimination depending upon the statement's "substance, context, and timing."9 Damon, 196 F.3d at 1359, 1361-62; see also Jones, 151 F.3d at 1322 n. 11; Ross, 146 F.3d at 1291 (decisionmaker's discriminatory comment uttered "sometime in 1990" was circumstantial evidence of pretext regarding plaintiff's termination in January 1994.)..."

Chambers v. Walt Disney World Co., 132 F.Supp.2d 1356,  (M.D. Fla. 2001).

### (ii)    Statements by Maya Smith and Nia Parker

On January 2, 2020, Plaintiff submitted a written complaint of Derek Ponder sexually harassing her. (Doc 70-1 **-** Maya Smith depo., Exhibit 6; COA_FRIPP-

001769 to COA_FRIPP-001772.)   On January 6, 2020, Allen Smith, who had

been wanting to get rid of Plaintiff for complaining about sexual harassment too

much, emailed Plaintiff's complaint to Nia Parker. (Doc 70-1 **-** Maya Smith depo.,

Exhibit 6; COA_FRIPP-001769 to COA_FRIPP-001772.)

On January 6, 2020, Nia Parker replied, "I will put some time on the

calendar to discuss**. I would also like to discuss next steps if the claims are**

**proven to be unfounded as this is one of numerous complaints made by this**

**employee that have not been substantiated**." (Doc 70-1**-** Maya Smith depo.,

Exhibit 6; COA_FRIPP-001768.)

On February 2, 2021, Maya Smith wrote an email to Jennifer Hicks stating,

"The department would like to move forward with the termination of Sylvia Fripp.

**We have been dealing with her for some time**." (Doc 70-1 **-** Maya Smith depo.,

Exhibit 33.)

### (iii)   **FMLA Paperwork**

This Court has found that a defendant's attempt to proffer a reason for

termination that arose after the decision to terminate a plaintiff's employment was

made is evidence of pretext.

In <u>Tebo v. City of Debary</u>, No. 18-13819 (11th Cir. Sep 03, 2019), plaintiff

Tebo sued the City of Debary for Title VII retaliation.  <u>Id.</u>  In defending the

lawsuit, the City of Debary cited reasons for his termination that arose after it

decided to terminate her.  Id.  This Court found that action by the City of Debary could be evidence that the firing was retaliatory:

> In particular, we find it relevant that all the reasons for Tebo's firing listed in the termination letter arose from conduct that occurred—or, in the case of Tebo's unauthorized email account, was discovered—after Parrott learned of the EEOC complaint and began drafting the letter. From this a reasonable juror could conclude that Parrott was looking for reasons to fire Tebo after he learned of her letter to the EEOC.

Tebo v. City of Debary, No. 18-13819 (11th Cir. Sep 03, 2019).

### (iv)    **Allen Smith's Failure to Follow Ordinances**

As discussed above, Allen Smith ordered a Fitness for Duty Exam in violation of the City of Atlanta's Ordinances.  This type of exam is never ordered for a person who is actively treating under workers' compensation.

### (v)    **Allen Smith's Refusal to Assign Plaintiff to Light Duty Work**

On January 25, 2018, Allen Smith emailed to Maya Smith, "Ms. Fripp informed me last year that she could not work in the concrete section because of a sexual harassment claim she had against an employee.  In addition, Ms. Fripp feels that is she is assigned to asphalt she will be the victim of sexual harassment or misconduct.  Also, Ms. Fripp feels as if she has been bullied and harassed by employees in the bridge section.  Due to this, I am unable to accommodate Ms. Fripp in a working capacity at North Ave." (Doc 70-1 – Maya Smith depo., Exhibit

7.)

On June 15, 2018, Allen Smith emailed to Maya Smith, "I have attached Sylvia Fripp's newest medical documents.  She has been placed on light duty, sedentary status.  I don't have any jobs that she can do that are sedentary."  (Doc 70-1 - Maya Smith depo., Exhibit 8.)  However, in his January 25, 2018 email, Allen Smith admitted that in 2017, he "placed Ms. Fripp in the office to assist with administrative tasks."  (Doc 70-1 – Maya Smith depo., Exhibit 7.)

On August 23, 2019, Allen Smith emailed to DeShonda Howard, "Ms. Fripp informed me today that her injury she sustained on a previous worker's comp case is aggravating her again. I informed Ms. Fripp that she would need to go home and contact you for further instruction." (Doc 70-1 - Maya Smith depo., Exhibit 12; COA_FRIPP—000897).

 On September 18, 2019, Allen Smith emailed to DeShonda Howard, "Sylvia stopped by today to give me her newest worker's compensation status form. She has been placed on restricted duty. I informed Sylvia that I could not accommodate her restrictions." (Doc 70-1 – Maya Smith depo., Exhibit 12, COA_FRIPP-000895.)

On October 23, 2019, Allen Smith emailed to Maya Smith, "I have attached Sylvia Fripp's medical document she provided on yesterday, 10-22-19. I informed her that we could not accommodate her restrictions."  (Doc 70-1 - Maya Smith

depo., Exhibit 12; COA_FRIPP-000894.)

Finally, after two years, Plaintiff was placed in the supervisor's office on December 3, 2019. Unfortunately, this was when Derek Ponder came and harassed her. (Doc 66-1 **-** Fripp Depo., Exhibit 7, p. 24-25.)

Allen Smith did give several other people sedentary or light duty work, though. Allen Smith let Shanta Garrett who walked with an arm in a sling come to work and sit around. Allen Smith let Lonnie Milon who walked with a cane come to work. (Doc 66-1 **-** Fripp depo., Exhibit 40, p. COA_FRIPP-001220 – COA_FRIPP_-001234.)

The evidence shows that Allen Smith refused to assign Plaintiff to light duty work after she had complained about sexual harassment, further supporting the Plaintiff's claim that her termination was retaliatory.

### (vi)    Allen Smith's Interference with Plaintiff's Workers' Compensation Claim

The Magistrate Court found, "Plaintiff presents no evidence whatsoever that Defendant did anything to interfere with any workers' compensation benefit to which she was entitled." (Doc. 75, p. 31.)

However, the evidence clearly shows that Allen Smith and company did actively interfere with Plaintiff's Workers Compensation case.

On January 8, 2020, Maya Smith contacted Plaintiff to inform her she had to

attend a Fitness for Duty Examination on January 13, 2020. At that time Plaintiff

told Maya Smith that Plaintiff was currently at the Workers Compensation doctor

receiving a fitness for duty examination. As a result of this conversation, Maya

Smith contacted Director of Enterprise and Risk Management Jerry De Loach.

(Doc 70-1 ‑ Maya Smith depo., Exhibit 13; COA_FRIPP 000013.) On January 8,

2020, Jerry DeLoach emailed Maya Smith, "Please cancel the FFD exam

scheduled. Ms. Fripp visited Dr. York today, and he will provide notes from that

visit." (Doc 70-1 ‑ Maya Smith depo., Exhibit 18; COA_FRIPP-001104.)

    Doctor York's note issued on January 8, 2020 stated, "May return to work

light duty today based on the FCE recommendations." (Doc 70-1 ‑ Maya Smith

depo., Exhibit 20, Exhibit 21; COA_FRIPP-000803.)  The FCE was the Functional

Capabilities Exam that Plaintiff was undergoing on January 8, 2020. (Doc 70-1 ‑

Maya Smith depo., Exhibit 22.)  On January 28, 2020, Connie Mabry contacted Dr.

York and asked him to change the work status to return to work without

restrictions. (Doc 70-1 ‑ Maya Smith depo., Exhibit 25; COA_FRIPP-000794 to

COA_FRIPP-000796.)  On January 28, 2020, Dr. York actually changed the work

status to "She can return to work 1/9/20 without restrictions. Sorry for any

previous confusion." (Doc 70-1 ‑ Maya Smith depo., Exhibit 24.)

    This Court has found that requiring a worker to submit to a fitness for duty

exam can be considered an adverse action for a Title VII retaliation claim.  The

fact that Defendant would interfere with Plaintiff's workers' compensation claim supports the argument that Defendant's reasons for termination was retaliatory.

## Conclusion

For the above reasons, Plaintiff-Appellant Sylvia Fripp prays that the Order of the District Court granting summary judgment to Defendant be reversed.


This 23 day of January, 2024.

Respectfully submitted,

*/s/ Kennon Peebles, Jr.*
_____
Kennon Peebles, Jr.
Attorney for Appellant
Sylvia Fripp
Georgia Bar No.: 570151

3296 Summit Ridge Pkwy
Suite 1720
Duluth, Georgia 30096
Tel: 470-395-4427
Fax: 678-325-7282
Email:

### Certificate of Compliance

I hereby certify that this document complies with the word limit of FRAP 32 in that it contains 12,997 words.

I hereby certify that this document with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

This the 23 day of January, 2023.

<u>/s/ Kennon Peebles, Jr.</u>
Kennon Peebles, Jr.
Attorney for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served upon the Defendant a copy of the

foregoing Brief of Appellant on Defendant by email and U.S. Mail to the

following:

Mellori Lumpkin Dawson, Esq.
Greenberg Traurig, LLP
Terminus 200, Suite 2500
3333 Piedmont Rd., NE
Atlanta, Georgia 30305
Email: mellori.lumpkindawson@gtlaw.com

I further certify that I have sent four paper copies to the Clerk of Court by

overnight courier.

This the __23__ day of January, 2024.

/s/ Kennon Peebles, Jr.
_____
Kennon Peebles, Jr.
Attorney for Appellant
Georgia Bar No.: 570151

3296 Summit Ridge Pkwy
Suite 1720
Duluth, Georgia 30096
Tel. 470-395-4427
Fax 678-325-7282
Email: kennon@peebleslaw.net