Appeal No. 23-14141-G

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

**SYLVIA FRIPP,**

**PLAINTIFF/APPELLANT,**

**v.**

**CITY OF ATLANTA, GEORGIA,**

**DEFENDANT/APPELLEE.**

---

On Appeal from the United States District Court
for the Northern District of Georgia

---

**BRIEF OF APPELLEE CITY OF ATLANTA, GEORGIA**

---

Mellori E. Lumpkin-Dawson
GREENBERG TRAURIG, LLP
3333 Piedmont Road, NE, Suite 2500
Atlanta, GA 30305
Tel. (678) 553-2100
Fax. (678) 553-2212
mellori.lumpkindawson@gtlaw.com

Attorney for Appellee

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Cir. R. 26.1-1, Appellee, City of Atlanta, through undersigned counsel, certifies that the following persons and entities are known to Appellee to have an interest in the outcome of this case or appeal:

City of Atlanta, Georgia (Appellee)

Edwards, Esq., Whitney Bly (Counsel for Appellee)

Fripp, Sylvia (Appellant)

Greenberg Traurig, LLP (Counsel for Appellee)

Larkins, III, John K. (United States District Court for the Northern District of Georgia Magistrate Judge)

Law Office of Kennon Peebles, Jr. (Counsel for Appellant)

Pannell, Charles A. (United States District Court for the Northern District of Georgia District Court Judge)

Peebles, Jr., Esq., Kennon (Counsel for Appellant)

Wilson, Natasha, Esq. (Counsel for Appellee)

The City of Atlanta is a governmental entity and thus is not publicly owned by any corporation.

Appellee further certifies that there is no known publicly traded company or corporation that has an interest in the outcome of the particular case or appeal.

C-1 of 1

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellee City of Atlanta, Georgia does not request oral argument and opposes Appellant Sylvia Fripp's ("Fripp" or "Appellant") request for oral argument. Oral argument is not necessary. The facts and legal arguments are adequately presented in the briefs and the record, and this Court will not be aided in its decisional process by oral argument.

# <u>TABLE OF CONTENTS</u>

**Page**

STATEMENT REGARDING ORAL ARGUMENT.....................................................i

STATEMENT OF JURISDICTION............................................................................i

STATEMENT OF THE ISSUES............................................................................1

STATEMENT OF THE CASE................................................................................1

    I.     COURSE OF THE PROCEEDINGS ............................................... 1
    II.    STATEMENT OF THE FACTS ..................................................... 6
    III.   STATEMENT OF THE STANDARD OF REVIEW ......................... 15

SUMMARY OF ARGUMENT ............................................................................ 15

ARGUMENT AND CITATIONS OF AUTHORITY.................................................. 16

    I.     SUMMARY JUDGMENT STANDARD............................................ 16
    II.    THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON APPELLANT'S TITLE VII RETALIATION CLAIM BECAUSE FRIPP FAILED TO MEET HER BURDEN OF PRODUCTION AND BURDEN OF PERSUASION. ........................................ 17

        A.    APPELLEE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE FRIPP HAS NOT PROFFERED ANY DIRECT EVIDENCE OF RETALIATION............................................... 18

            1.    Fripp's unsubstantiated allegations related to years-old emails are insufficient to establish direct evidence of retaliation under Title VII. ............................................. 19

        B.    APPELLEE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE FRIPP HAS NOT ESTABLISHED A PRIMA FACIE CASE OF RETALIATION...................................................... 22

            1.    Fripp's allegations of adverse actions other than her termination are insufficient as a matter of law to support a claim of Title VII retaliation. ..................................... 23
            2.    Fripp wholly fails to establish any causal connection between her purported protected activity and her termination. .................................................................. 26

        C.    APPELLEE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF CANNOT ESTABLISH PRETEXT................ 30

CONCLUSION............................................................................................................ 39

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Federal Cases**

*Access Now, Inc. v. Sw. Airlines Co.*,
  385 F.3d 1324 (11th Cir. 2004) ........................................................23

*Alvarez v. Royal Atl. Devs., Inc.*,
  610 F.3d 1253 (11th Cir. 2010) ........................................................25

*Anderson v. Liberty Lobby*,
  477 U.S. 242 (1986).........................................................................13

*Bass v. Bd of Cnty. Comm'rs, Orange Cnty., Fla.*,
  256 F.3d 1095 (11th Cir. 2001) ........................................................22

*Burlington N. & Santa Fe Ry. v. White*,
  548 U.S. 53 (2006)...........................................................................17

*Chapman v. AI Transp.*,
  229 F.3d 1012 (11th Cir. 2000) (en banc) ........................................24

*Earley v. Champion Int'l Corp.*,
  907 F.2d 1077 (11th Cir. 1990) ........................................................24

*Fernandez v. Trees, Inc.*,
  961 F.3d 1148 (11th Cir. 2020) ........................................................14

*Holston Invs., Inc. B.V.I. v. LanLogistics Corp.*,
  677 F.3d 1068 (11th Cir. 2012) ........................................................11

*Hurley v. Moore*,
  233 F.3d 1295 (11th Cir. 2000) ........................................................22

*Jefferson v. Sewon Am., Inc.*,
  891 F.3d 911 (11th Cir. 2018) ..........................................................14

*Jones v. RS & H, Inc.*,
  775 F. App'x 978 (11th Cir. 2019)....................................................25

*Kidd v. Mando Am. Corp.*,
  731 F.3d 1196 (11th Cir. 2013) ........................................................21

*Lewis v. Blue Bird Corp.*,
  835 F. App'x. 526 (11th Cir. 2020)......................................17, 18, 23

iv

*Little v. United Techs.*,
    103 F.3d 956 (11th Cir. 1997) ........................................................... 17

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
    735 F. Supp. 2d 856 (N.D. Ill. 2010) ................................................ 29

*McCann v. Tillman*,
    526 F.3d 1370 (11th Cir. 2008) .................................................. 23, 24

*McCormick v. City of Fort Lauderdale*,
    333 F.3d 1234 (11th Cir. 2003) ......................................................... 11

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) .................................................................. 17, 23

*Ramirez v. Bausch & Lomb, Inc.*,
    546 F. App'x 829 (11th Cir. 2013) .................................................... 21

*Raney v. Vinson Guard Serv.*,
    120 F.3d 1192 (11th Cir. 1997) ......................................................... 17

*Robertson v. Riverstone Cmtys., LLC*,
    849 F. App'x 795 (11th Cir. 2021) .................................................... 14

*Shannon v. Bellsouth Telecomms., Inc.*,
    292 F.3d 712 (11th Cir. 2002) ........................................................... 21

*Taliaferro v. Freeman*,
    595 F. App'x 961 (11th Cir. 2014) .................................................... 14

*Tebo v. City of Debary*,
    784 Fed. Appx. 727 (11th Cir. 2019) ........................................... 27, 28

*Texas Dep't of Cmty. Affairs v. Burden*,
    450 U.S. 248 (1981) .......................................................................... 24

*Thomas v. Cooper Lighting, Inc.*,
    506 F.3d 1361 (11th Cir. 2007) ......................................................... 21

*Todd v. Fayette Cnty. Sch. Dist.*,
    998 F.3d 1203 (11th Cir. 2021) ......................................................... 14

*Turnes v. AmSouth Bank, N.A.*,
    36 F.3d 1057 (11th Cir. 1994) ........................................................... 27

*Tyler v. Kia Motors Mfg. Ga., Inc.*,
    702 F. App'x. 945 (11th Cir. July 12, 2017) ..................................... 23

v

*Williams v. Waste Mgmt., Inc.*,
   411 F. App'x 226 (11th Cir. 2011) ....................................................22

*Witter v. Bank of Am.*,
   No. 1:07- cv-1344-GET-AJB, 2008 U.S. Dist. LEXIS 133681
   (N.D. Ga. May 15, 2008) ...............................................................13

*Yelling v. St. Vincent's Health Sys.*,
   82 F.4th 1329 (11th Cir. 2023) ........................................................17

## Federal Statutes

28 U.S.C. § 1291 ..................................................................................i

28 U.S.C. § 1331 ..................................................................................i

29 U.S.C. § 201 *et. seq* .........................................1, 2, 3, 4, 5, 10, 11

42 U.S.C. § 1983 .................................................................1, 2, 3, 10

42 U.S.C. § 2000e ... i, 1, 2, 3, 4, 5, 6, 9, 10, 11, 12, 13, 15, 16, 17, 18, 19, 20, 21, 22, 27, 29

FMLA..........................................................................10, 25, 26, 27, 28

Pub. L. No. 104-191 (HIPPA) ...............................................................1

## State Statutes

Atlanta, GA Ord. Code § 114-380 ........................................................25

Atlanta, GA Ord. Code § 114-528(b)(16)...................................10, 12, 24

Atlanta, GA Ord. Code § 114-528(b)(3)....................................10, 12, 24

Atlanta, GA Ord. Code § 114-528(b)(8)....................................10, 12, 24

## Rules

Fed. R. App. P. § 26.1 ...........................................................................1

Fed. R. App. P. § 26.1-1 .........................................................................1

Fed. R. App. P. § 32(a)(5)......................................................................31

Fed. R. App. P. § 32(a)(6)......................................................................31

Fed. R. App. P. § 32(a)(7)(B) .................................................................31

Fed. R. App. P. § 32(f) ...........................................................................31

Fed. R. App. P. § 38 ..............................................................................14

Fed. R. Civ. P. 56 .......................................................................................13

## STATEMENT OF JURISDICTION

The District Court had jurisdiction over this matter pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and 28 U.S.C. § 1331. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

The issues for this Court's consideration are:

(1)    Whether the District Court properly concluded that Appellant failed to present direct evidence of Title VII retaliation.

(2)    Whether the District Court properly concluded that Appellant failed to present sufficient evidence to establish a prima facie case of Title VII retaliation.

(3)    Whether the District Court properly concluded that Appellant failed to present sufficient evidence to establish pretext for sex discrimination.

## STATEMENT OF THE CASE

### I.    COURSE OF THE PROCEEDINGS

On July 2, 2021, Appellant Sylvia Fripp ("Appellant" or "Fripp") initially filed suit against the City of Atlanta, Georgia ("Appellee" or the "City"). [Dkt. 1]. Appellant sought to impose liability for alleged discriminatory and retaliatory acts, hostile work environment, and failure to pay overtime and/or minimum wages pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq*. ("Title VII"); the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution via 42 U.S.C. §1983 ("Section 1983"); the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq*. ("FLSA"); and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). [*Id.*] On July 12, 2021, Fripp filed her First Amended Complaint, adding an additional count for Invasion of Privacy. [Dkt. 3]

1

Appellee waived service of the summons on July 28, 2021. [Dkt. 5] The Parties filed a Joint Motion for Extension of Time to Respond to the Amended Complaint on September 23, 2021. [Dkt. 6]

The City timely filed a Motion to Dismiss Appellant's First Amended Complaint on October 15, 2021 based upon: (1) Appellant's failure to allege sufficient facts to support a plausible inference of discrimination; (2) Appellant's failure to allege sufficient facts to support a plausible inference of retaliation; (3) Appellant's failure to allege sufficient facts to support a plausible inference of a violation of the FLSA; (4) Appellant's failure to allege sufficient facts to support a plausible inference of invasion of privacy; and (5) the lack of a basis for attorneys' fees or punitive damages. [Dkt. 8, Dkt. 8-1]

Appellant filed her Motion for Extension of Time to Respond to Appellee's Motion to Dismiss on October 27, 2021. [Dkt. 9]. On November 8, 2021, Appellant filed a Motion for Leave to File a Second Amended Complaint along with a proposed Second Amended Complaint which sought to correct the pleading deficiencies identified in Appellee's initial Motion to Dismiss, including a request to: withdraw her claims for disparate treatment discrimination under Title VII and Section 1983; bolster the allegations in support of her remaining Title VII, Section 1983, and FLSA claims; and clarify that her privacy claim was a state law invasion of privacy claim. [Dkt. 11, Dkt. 11-2] To that end, Appellant's proposed Second

Amended Complaint included multiple new factual allegations. [Dkt. 11-2] On that same date, Appellant filed a Brief In Opposition to Defendants' Motion to Dismiss, based largely on Appellant's curative attempt set forth in the Second Amended Complaint. [Dkt. 10]

Appellee responded in opposition to Appellant's Motion for Leave to File a Second Amended Complaint on December 6, 2021, consenting to the withdrawal of Fripp's disparate treatment claims, but arguing that Fripp's proposed Second Amended Complaint still failed to state a claim upon which relief could be granted [Dkt. 14] On the same date, Appellee also filed its Reply Brief in Support of its Motion to Dismiss [Dkt. 13]

On March 16, 2022, Magistrate Judge Larkins ordered Fripp to supplement her briefing on the Motion for Leave to File a Second Amended Complaint to address the City's arguments on Section 1983 liability and granted the City permission to file a responsive supplemental brief. [Dkt. 15] The Parties submitted the required briefing [Dkt. 17, Dkt. 18], in which the City argued, in part, that Fripp's Title VII claims were subject to dismissal because Fripp failed to exhaust her administrative remedies by filing a timely charge of discrimination. [Dkt. 18 at 4-5] The Court held oral argument on April 22, 2022 on the pending Motion to Dismiss and Motion for Leave to Amend [Dkt. 19], during which Fripp was "unable to identify any discriminatory or sexually harassing conduct that was timely

exhausted under Title VII." [Dkt. 20 at 20].

On June 7, 2022, after oral argument, Magistrate Judge Larkins issued a Report and Recommendation granting Appellant's Motion for Leave to File A Second Amended Complaint, in part. Magistrate Judge Larkins recommended the District Court grant the City's Motion to Dismiss and deny Fripp's Motion for Leave to file A Second Amended Complaint with respect to Fripp's Section 1983 hostile work environment claim, Section 1983 retaliation claim, and state law invasion of privacy claim. [Dkt. 20 at 22-23] The District Court adopted Magistrate Judge Larkins's Report and Recommendation regarding Appellant's Motion for Leave to File a Second Amended Complaint on June 30, 2022. [Dkt. 23] On July 18, 2022, when Appellant had not filed her Second Amended Complaint, which was due on July 15, 2022, Magistrate Judge Larkins ordered Appellant to show cause why the action should not be dismissed without prejudice for want of prosecution and failure to follow a court order. [Dkt. 24]

Appellant filed her Second Amended Complaint on July 25, 2022, asserting claims for Title VII retaliation and violation of the FLSA. [Dkt. 25] Appellee filed its Motion to Dismiss Appellant's Second Amended Complaint on August 8, 2022. [Dkt. 27] On September 9, 2022, Magistrate Judge Larkins issued a Report and Recommendation recommending that Appellant's Title VII retaliation claim be dismissed without prejudice as it pertained to backpay, raises, promotional

opportunities, and her discharge. Appellant objected to Magistrate Judge Larkins's Report and Recommendation on September 23, 2022 [Dkt. 32], and the District Court adopted Magistrate Judge Larkins's Report and Recommendation on October 5, 2022. [Dkt. 33]

The City filed its Answer and Affirmative Defenses to Fripp's Second Amended Complaint on October 20, 2022. [Dkt. 34] The Parties served Initial Disclosures and filed a Joint Preliminary Report and Discovery Plan on November 21, 2022. [Dkt. 35, Dkt. 36, and Dkt. 37] Magistrate Judge Larkins issued the Scheduling Order on November 23, 2022. [Dkt. 38]

On December 21, 2022, Fripp filed her Motion for Leave to File Appellant's Third Amended Complaint. [Dkt. 39]  Appellee filed its Response in Opposition on January 4, 2023. [Dkt. 41] On January 23, 2023, Magistrate Judge Larkins granted Appellant's Motion for Leave to File Appellant's Third Amended Complaint. [Dkt. 42]

Appellant's Third Amended Complaint became the operative complaint on January 27, 2023, in which she only asserted claims for Title VII retaliation and unpaid overtime under the FLSA.   [Dkt. 43] Appellee filed its Answer and Affirmative Defenses to the Third Amended Complaint on February 10, 2022. [Dkt. 44] On March 28, 2023, the Parties filed a Joint Motion to Extend the Discovery Deadline through and including July 24, 2023. [Dkt. 52].  Each of the parties served

interrogatories and requests for production and completed discovery in accordance with the District Court's scheduling order.

Appellee filed for summary judgment on all claims asserted by Appellant on August 24, 2023. [Dkt. 65]  Appellant filed her response in opposition on September 14, 2023 [Dkt. 71], and Appellee filed its reply in support of its motion for summary judgment on September 28, 2023 [Dkt. 74]  On October 23, 2023, Magistrate Judge Larkins issued a 44-page Report and Recommendation recommending that the Court grant Appellee's motion for summary judgment on both Appellant's Title VII retaliation and FLSA claims.  [Dkt. 75]  In response to the Magistrate Court's Report and Recommendation, Appellant filed her objections on November 6, 2023. [Dkt. 77]  The District Court adopted the Magistrate's Report and Recommendation, in full, in a 21-page Order, and granted Appellee's motion for summary judgment on November 16, 2023. [Dkt. 78]  On November 17, 2023, the Clerk of the Court entered judgment on behalf of Appellee for its costs in defending against this action. [Dkt. 79].  Appellant now appeals the District Court's grant of summary judgment on her Title VII retaliation claim.

## II.    STATEMENT OF THE FACTS

Fripp commenced employment with the City of Atlanta in the City's sanitation department in February 2013. [Dkt. 66-1, Fripp. Dep. 91:15-17, 91:25-92:6]. Fripp was transferred to the Department of Transportation ("DOT") in May

2015, where she started working as an Equipment Operator II. [Dkt. 66-1, Fripp Dep. 93:9-16]. As an Equipment Operator II, Fripp worked in the City's bridge shop as well as its North Avenue team, which maintained sidewalks, roads, and bridges. [Dkt. 66-1, Fripp Dep. 95:21-96:6, Dkt. 67-1, A. Smith Dep. 11:14-16.] Her duties included working in an office and "out in the field" transporting trucks, assisting with asphalt and concrete, and, for approximately eight months, working as a pothole inspector. [Dkt. 66-1, Fripp Dep. 96:12-97:14, 97:25-98:2. 101:25-102:5, Dkt. 67-1, A. Smith Dep. 19:11-20]. After complaining about sexual harassment while working out in the field, Fripp began work in the DOT's administrative building from November 2017 and continued to work there until her termination from the City in April 2021. [Dkt. 66-1, Sylvia Fripp Deposition ("Fripp Dep."), 101:5-24, 102:1-103:8.] At all times relevant to this case, Allen Smith was Fripp's supervisor. [Dkt. 66-1, Fripp Dep. 75:6-10; 75:20-25].

In November 2017, Fripp complained to Allen Smith that a coworker had sexually harassed her in the bridge shop. [Dkt. 67-1, Allen Smith Dep. at 33.] Allen Smith investigated the complaint, but he was unable to substantiate Fripp's claims. [Dkt. 67-1, A. Smith Dep. 14:1-8, 33:1-18; Dkt. 65-18, COA_FRIPP001748-1754]. Nevertheless, because Fripp felt that she had suffered sexual harassment, Allen Smith transferred her from the bridge shop to the administration building, where Fripp primarily remained for the remainder of her employment with the City. [Dkt.

7

67-1, Allen Smith Dep. p. 37; Dkt. 66-1, Fripp Dep. pp. 100-02.] Fripp conceded that she "didn't have any problem with" working in the administration building, which she explained "wasn't stressful." [Dkt. 66-1, Fripp Dep. 103:9-14, 103:20-23]

On April 18, 2018, Fripp filed her first Charge of Discrimination with the EEOC against the City, alleging sex discrimination, hostile work environment, and retaliation ("2018 EEOC Charge") in violation of Title VII of the Civil Rights Act of 196, as amended ("Title VII"). [Dkt. 66-3, COA_FRIPP000312-313 (Fripp Dep. Ex. 2).] In the 2018 EEOC Charge, Fripp alleged that she filed a sexual harassment complaint against a coworker in October 2015 and, two years later, was "transferred to the front office to perform odd jobs and subjected to a hostile environment when [she] was denied the ability to perform her job, denied pay for work performed, and denied promotion to a supervisor position." *Id*. On January 15, 2019, Fripp filed her first lawsuit against the city, alleging discrimination, hostile work environment, and retaliation in violation of Title VII. [Dkt. 66-1, Fripp Dep. 79:16-80:2, Dkt. 66-4, Fripp Dep. Ex. 3.] Fripp voluntarily dismissed this lawsuit on September 16, 2019. [Dkt. 65-22, Exhibit 20, Plaintiff's Response to Defendant's Interrogatory No. 13].

Following a series of health events, including a workplace injury, Fripp was absent from work and received workers' compensation benefits in Fall 2019. [Dkt. 70-1, Maya Smith Deposition ("Maya Smith Dep."), Ex. 12.] In October 2019, Fripp's workers' compensation doctor released her to work on regular duty without

any limitations. [Dkt. 65-49, p. 8.] However, Fripp did not return to work. [Dkt. 70-15, Maya Smith Dep., Ex. 14.] On November 27, 2019, Nia Parker, the Human Resources Director for the City's Department of Public Works, sent Fripp a letter stating that, if Fripp did not return to work by December 3, 2019, Fripp's job would be deemed abandoned. [Dkt. 70-1, Maya Smith Dep., Ex. 14.]

On December 3, 2019, despite having no medical work restrictions, Plaintiff reported to work wearing a leg brace and using a cane. [Dkt. 67-1, A. Smith Dep. 51:20-52:6, Dkt. 65-48, COA_FRIPP000160, COA_FRIPP000779-780]; [Dkt. 67-1, Allen Smith Dep. 51:20-52:6.] Given that she presented to work with a leg brace and cane despite having no medical work restrictions, the City's Human Resources manager, Maya Smith, scheduled a fitness-for-duty exam for Fripp on January 13, 2020. [Dkt. 70-1, Maya Smith Dep., pp. 32:8-23.] The January 13, 2020 fitness-for-duty exam was canceled, however, in order for Fripp to complete a visit with her worker's compensation physician on January 8, 2020. [Dkt. 70-19, Maya Smith Dep., Ex. 18; Dkt. 70-38, Maya Smith Dep., Ex. 37.] After that office visit, Fripp's workers' compensation physician issued a note stating that Fripp could "return to work 1/9/20 without restrictions." [Dkt. 65-50, COA_FRIPP000799-803; COA_FRIPP000854].

Following Fripp's January 8, 2020 visit with her worker's compensation physician, Maya Smith notified Fripp on February 4, 2020 that Fripp was required

to report for a fitness for duty assessment on February 6, 2020 and could complete a request for disability accommodation and submit it within ten (10) business days. [Dkt. 65-51, COA_FRIPP000769; COA_FRIPP000904-911].  Fripp did not attend the scheduled fitness for duty assessment. [Dkt. 65-52 Pl.'s Response to Def.'s First Requests for Admission No. 23].  Fripp also did not submit a request for disability accommodation within ten (10) business days.  [Dkt. 65-32, Declaration of Jennifer Hicks, ¶ 6]

On January 2, 2020, Fripp submitted an employee grievance form to the City alleging sexual harassment by a coworker, Derek Ponder.  [Dkt. 67-4, COA_FRIPP000736-738] (A. Smith Dep. Ex. 3)] On January 7, 2020, Schuyler Brown, an employee relations specialist in the City's Office of Labor and Employee Relations ("OLER"), advised Fripp that OLER had received Fripp's complaint and would contact Fripp for additional information if needed. [Dkt. 67-24, COA_FRIPP000749].  On March 25, 2020, Allen Smith sent Maya Smith a draft notice of a Proposed Adverse Action, in which he recommended Fripp be dismissed due to her failure to attend the fitness-for-duty exam, but the termination did not proceed because Michael Kirkwood, the City's then-director of OLER, advised that Fripp's complaint against Derek Ponder was still pending and needed to be resolved before the City could move forward with Fripp's termination. [Dkt. 69-1, Deposition of Michael Kirkwood ("Kirkwood Dep."), pp. 8:11-20, 23:14-24:14, 46:18-48:7.]

In September 2020, Kirkwood informed Fripp that OLER was investigating her claim of sexual harassment against Derek Ponder. [Dkt. 66-10, A. Smith Dep. Ex. 9, COA_FRIPP000745-748; Dkt. 67-1, Allen Smith Dep., Ex. 9.] On September 30, 2020, Kirkwood emailed Fripp to schedule an interview related to her claim of sexual harassment for October 1, 2020. [Dkt. 65-25, Exhibit 23, COA_FRIPP000745-748] On October 1, 2020, Kirkwood emailed Fripp's counsel to schedule an interview related to her claim of sexual harassment on either October 6, 2020 or October 7, 2020. [Dkt. 66-1, Fripp Dep. 157:17-22; Dkt. 66-15, COA_FRIPP001664 (Fripp Dep. Ex. 15)].  After hearing no response from Fripp's counsel, on October 7, 2020, Kirkwood sent another email to both Fripp's counsel and Fripp requesting an interview with Fripp on October 9, 13, or 14, 2020. [*Id.*] Neither Fripp nor her counsel ever responded to the City's request for an interview regarding Fripp's sexual harassment complaint. [Dkt. 66-15, COA_FRIPP001686-1687 (Fripp Dep. Ex. 15.] Kirkwood ultimately determined that Fripp's allegations of sexual harassment were unsubstantiated. [Dkt. 69-1, Kirkwood Dep., 37:1-5.]

On January 28, 2021, Fripp filed a second Charge of Discrimination with the EEOC ("2021 EEOC Charge) against the City, alleging claims for sex discrimination and retaliation in violation of Title VII. [Dkt. 66-1, Fripp Dep. 80:16-18; Dkt. 66-5, FRIPP000001 (Fripp Dep. Ex. 4)] In the 2021 EEOC Charge, Fripp contends coworker Derek Ponder harassed her from about  September 2019 through July 5,

2020. [Dkt. 66-5, FRIPP000001 (Fripp Dep. Ex. 4)].  Fripp also claims in the 2021 EEOC Charge that the City retaliated against her by "making [her] work out of [her] job classification; assigning [her] faulty vehicles, equipment, and tools; making [her] work in hazardous conditions; shorting her pay for the work she performed; refusing to assign her to light duty after an injury; and refusing to promote [her]." [Dkt. 66-5, FRIPP000001 (Fripp Dep. Ex. 4) ; Dkt. 66-1,  Fripp Dep. 123:11-24, 129:24-130:18, 130:25-131:6, 131:20-25] Fripp also claimed she was excluded from Christmas lunch and meetings with other coworkers. [Dkt. 66-1, Fripp Dep. 184:5-18.]

From December 2020 through March 2021, Fripp did not report to work and did not submit any documentation to the City regarding her absence from work. [Dkt. 67-1, Allen Smith Dep. at p. 61:13-24].  On March 5, 2021, Fripp's supervisor, Allen Smith, sent Fripp a memo stating that Fripp would need to communicate with the City regarding her ability to return to work no later than March 11, 2021 and reminded Fripp that she would need to contact the City to request an accommodation, if needed. [Dkt. 67-16, COA_FRIPP001187(Allen Smith Dep. Ex. 15); Dkt. 67-1, Allen Smith Dep., p. 67:19-68:4.] Fripp submitted a physician's note on March 8, 2021, stating that she should be placed on medical leave from January 14, 2021 through July 1, 2021, but Fripp did not contact the City or anyone in the Human Resources Department to request an additional 120 days of leave. [Dkt. 65-

12

2 at ¶ 62; Dkt. 67-1, Allen  Smith Dep. 72:7-11, 72:18-73:19; Dkt. 68-12, Jennifer

Hicks Deposition ("Hicks Dep.") Ex. P-11.] The City provided Fripp with the FMLA

paperwork she would have needed to complete to protect her job, but Fripp did not

apply for FMLA or ask for any accommodation for her work. [Dkt. 65-2 at ¶¶ 64-

65, Dkt. 66-1, Fripp Dep. 150:24-151:2, 151:3-6, 152:21-153:7; Dkt. 70-1, Dkt. 65-

59, COA_FRIPP001617-1627; Maya Smith Deposition ("Maya Smith Dep."),

65:20-25].

Following Fripp's extended unapproved absence from work, the City issued

Fripp a Notice of Proposed Adverse Action on April 8, 2021 and a Notice of  Final

Adverse Action on April 27, 2021. [Dkt. 66-1, Fripp Dep. 147:6-14; Dkt. 66-16,

COA_FRIPP000013-14 (Fripp Dep. Ex. 16)]. Fripp was terminated for (1) "failure

to carry out an official directive or refusal to carry out the lawful, reasonable

directions given by a superior or other acts of insubordination" in violation of City

of Atlanta Code of Ordinances Section 114-528(b)(3); (2) "absence without official

leave" in violation of City of Atlanta Code of Ordinances Section 114-528(b)(8);

and (3) "the refusal, when so directed, to be examined by a licensed physician

designated by the City" in violation of City of Atlanta Code of Ordinances Section

114-528(b)(16). [Dkt. 66-17, Fripp Dep. Ex. 17; Dkt. 67-1, Allen Smith Dep., p.

61:14-62:3, 64:20-24, 70:21-71:23.] Allen Smith, the DOT deputy commission who

was the sole decisionmaker with respect to Fripp's termination, was not aware of

Fripp's 2018 EEOC Charge, 2019 lawsuit, or 2021 EEOC Charge at the time he made the decision to terminate Fripp's employment. [Dkt. 67-1, Allen Smith Dep., p. 55:20-21, 81:21-82:13, 87:9-87:24.]

Fripp filed her second lawsuit against the City on July 2, 2021, asserting claims for sex discrimination, hostile work environment, and retaliation in violation of Title VII and 42 U.S.C. § 1983, and violation of the Fair Labor Standards Act. [Dkt. 1.] After the City filed motions to dismiss the Complaint, First Amended Complaint, Second Amended Complaint, and Third Amended Complaint, the claims that remained in the action were for retaliation under Title VII and violation of the FLSA. [Dkt. 43.] In her response to the City's motion for summary judgment, Fripp abandoned her claim for violation of the FLSA, leaving only the retaliation claim under Title VII remaining. [Dkt. 71.]

Despite the purported acts of retaliation Fripp included in the 2021 EEOC Charge, during her deposition, Fripp admitted that: all job duties she performed were required of her positions as Equipment Operator II; that she could not identify any specific promotion to which she applied and was denied; that the City accommodated her with light duty after she returned to work following a surgery and could not recall a time where she requested and was refused light duty; and that her entire department was assigned the same vehicles and equipment. [Dkt. 65-2 at ¶¶ 39-41, 49, 51-52; Dkt. 65-35, COA_FRIPP000250-252; COA_FRIPP000331-

334; COA_FRIPP000902-903; COA_FRIPP001643, 1648-1651; Dkt. 65-37, Pl.'s

Response to Def's First Requests for Admission No. 15; Dkt. 66-1, Fripp Dep. 62:6-

63:3, 63:21-64:19, 66:8-68:7, 130:25-131:23; 138:19-139:9, 141:3-6, 141:25-

142:19, 144:3-5.]

## III.    STATEMENT OF THE STANDARD OF REVIEW

This Court reviews a district court's decision to grant summary judgment de

novo, applying the same legal standards as the district court.  *Holston Invs., Inc.*

*B.V.I. v. LanLogistics Corp.*, 677 F.3d 1068, 1070 (11th Cir. 2012) (citing

*McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1242–43 (11th Cir. 2003)).

## <u>SUMMARY OF ARGUMENT</u>

Appellant Fripp's appeal is premised upon the identical arguments and

uncorroborated evidence that were unequivocally rejected by the Magistrate and

District Court.  Again, Fripp seeks to impose liability for non-existent retaliation that

purportedly occurred in the form of termination twenty-four (24) months after she

filed a 2019 lawsuit against the City; fifteen (15) months after she filed an employee

grievance form alleging sexual harassment in January 2020; and three (3) months

after she filed a January 2021 EEOC Charge.   Now, after almost three years of

litigation, Fripp has not and cannot set forth any evidence to support her Title VII

retaliation claim.   Significantly, Fripp has not and cannot cite any case law that

substantiates her arguments.  Notwithstanding Fripp's accusation of retaliation, the

indisputable facts remain the same – Fripp was terminated for the following legitimate, nonretaliatory reasons:  (1) "failure to carry out an official directive or refusal to carry out the lawful, reasonable directions given by a superior or other acts of insubordination," in violation of City of Atlanta Code of Ordinances Section 114-528(b)(3); (2) "absence without official leave," in violation of City of Atlanta Code of Ordinances Section 114-528(b)(8); and (3) "the refusal, when so directed, to be examined by a licensed physician designated by the City," in violation of City of Atlanta Code of Ordinances Section 114-528(b)(16).  [Dkt. 66-17, Notice of Final Adverse Action, COA_FRIPP000721, Fripp Dep. Ex. 17].

Fripp's allegations of retaliation are premised entirely, without exception, on her disagreement with Appellee's decision to terminate her.  Disagreement, however, without more, is not retaliation.  And Fripp's disagreement cannot establish that the reasons for her termination were pretextual.  Accordingly, this Court should affirm the District Court's award of summary judgment in favor of Appellee.

<u>**ARGUMENT AND CITATIONS OF AUTHORITY**</u>

## I.    SUMMARY JUDGMENT STANDARD.

Summary judgment is appropriate when the "pleadings, depositions, affidavits, declarations, and discovery materials on file demonstrate that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56. When the evidence supporting the non-moving party is merely colorable and is not significantly probative, summary judgment is warranted. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).

## II. THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON APPELLANT'S TITLE VII RETALIATION CLAIM BECAUSE FRIPP FAILED TO MEET HER BURDEN OF PRODUCTION AND BURDEN OF PERSUASION.

Appellee is entitled to summary judgment on Fripp's Title VII retaliation claim because (1) Fripp has not and cannot set forth any direct evidence of retaliation based upon her sexual harassment claim; (2) Fripp has not and cannot present any circumstantial evidence of retaliation; and (3) Fripp cannot directly rebut Appellee's legitimate, nonretaliatory reasons for her termination by demonstrating pretext.

After more than three years and numerous opportunities to acquire evidence to support her claim, Fripp has failed to meet her burden of production and her burden of persuasion. Fripp's appeal recycles and repeats the same meritless arguments previously considered and rejected by the District Court. Fripp neither substantiates her arguments with applicable precedent nor attempts to distinguish relevant precedent which unequivocally requires dismissal of her Title VII retaliation claim. Instead, Fripp relies upon unsubstantiated speculation and conjecture couched as "facts." Notably, the overwhelming majority of Appellant's Statement of Facts is unsupported by citation to record evidence, but rather based on unsubstantiated citation to her Third Amended Complaint. [Br. of Appellant, pp. 7-

13][1] *See, e.g., Witter v. Bank of Am.*, No. 1:07- cv-1344-GET-AJB, 2008 U.S. Dist. LEXIS 133681, at *25-26 (N.D. Ga. May 15, 2008) (explaining that allegations in a complaint are not evidence for purposes of considering a motion for summary judgment). Yet, Fripp knowingly continues to force Appellee to expend unnecessary resources to address her unsupported assertions. Such an appeal is frivolous. *Taliaferro v. Freeman*, 595 F. App'x 961, 963 (11th Cir. 2014) (citations omitted) ("Pursuant to Federal Rule of Appellate Procedure 38, if we determine [ ] that an appeal is frivolous, [we] may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee."). As such, this Court should affirm the District Court's Order granting Appellee's motion for summary judgment.

### A. APPELLEE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE FRIPP HAS NOT PROFFERED ANY DIRECT EVIDENCE OF RETALIATION.

Fripp contends that the Court erred in granting Appellee's motion for summary judgment because she "produced direct evidence of retaliation in the present case." [Br. of Appellant, p. 26] However, Appellant's contentions are without merit. It is well-established in this Circuit that "[d]irect evidence is evidence, that, if believed, proves the existence of discriminatory intent without

---

[1] Citations to Appellant's Brief refer to the numbered pages of her Argument and Citation of Authority rather than to the docketed page numbers generated in the header of each document by the Court's electronic filing system.

inference or presumption." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 921 (11th Cir. 2018) (cleaned up). Direct evidence must demonstrate both a retaliatory attitude and a correlation between that attitude and the allegedly retaliatory action complained of by the employee: "[o]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1215 (11th Cir. 2021) (citing *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1156 (11th Cir. 2020)). For a comment to be direct evidence, it must typically be made (1) by the decisionmaker responsible for the alleged discriminatory act, (2) in the context of the challenged decision, and (3) in temporal proximity to the employment decision. *See Robertson v. Riverstone Cmtys., LLC*, 849 F. App'x 795, 801 (11th Cir. 2021). Here, Plaintiff's supposed direct evidence fails to satisfy any of these requirements.

### 1. Fripp's unsubstantiated allegations related to years-old emails are insufficient to establish direct evidence of retaliation under Title VII.

As purported direct evidence of retaliation, Appellant points to nothing more than the same years-old emails previously rejected by both the Magistrate and District Courts as insufficient to constitute direct evidence of Title VII retaliation. Specifically, Appellant relies upon the following documents as alleged direct evidence of retaliation:

19

A January 25, 2018 email between Allen Smith and Maya Smith in which Mr.

(Allen) Smith states:

> Ms. Fripp informed me last year that she could not work in the concrete
> section because of a sexual harassment claim she had against an employee.  In
> addition, Ms. Fripp feels that if she is assigned to asphalt, she will be the
> victim of sexual harassment or misconduct.  Also, Ms. Fripp feels as if she
> has been bullied and harassed by employees in the bridge section, this is why
> I moved Ms. Fripp from the bridge section.  Due to this, I am unable to
> accommodate Ms. Fripp in a working capacity at North Ave.  [Dkt. 70-8 p.2]

An August 8, 2019 email between Allen Smith and Maya Smith in which Mr.

(Allen) Smith states:

> I am requesting that Ms. Fripp be reassigned to the Claire Drive location.  I
> am no longer able to accommodate her at North Ave.  Ms. Fripp has claimed
> that she has been harassed in multiple sections at North Ave. . . I believe this
> would be beneficial for Ms. Fripp because this would be a new environment.
> Also, Claire Drive could use the additional help.  [Dkt. 70-10, p.1]

A March 2020 Notice of Proposed Adverse Action that includes a recitation

of facts regarding Fripp's employment with the City, including that:

> In November of 2017, Sylvia Fripp (Equipment Operator II) submitted a
> statement claiming harassment, discrimination, and bullying by other
> employees.  In December of 2017, HR Manager Paula Magee determined the
> claims could not be substantiated.  Manager Allen Smith informed Ms. Fripp
> she would be reassigned to the asphalt section to place space between her and
> the employees she felt were harassing her.  Ms. Fripp said that she could not
> work in the asphalt or concrete section because of sexual harassment.  This
> information was sent to HR Manager Maya Smith and Labor Relations. . . Ms.
> Fripp said she was not going to work in asphalt because of sexual harassment.
> [Dkt. 70-29, pp.1-2]

[Br. of Appellant, pp. 27-28]

Appellant argues, without any supporting precedent, that this evidence shows

20

"Allen Smith, the decisionmaker in the Appellant's firing, stated several times in his emails that he wanted to get rid of Plaintiff because she complained about sexual harassment too much." [Br. of Appellant, p. 27] But this statement is patently false. None of the aforementioned documents make any such statement. Neither the emails nor the Notice of Proposed Adverse Action make any statement that Appellant is being terminated or retaliated against because she filed a complaint of sexual harassment. While the documents summarize the fact that Appellant made claims of sexual harassment when assigned to various job locations, none of the documents contain statements by the decisionmaker in this case – Allen Smith – that Appellant's complaints are the reasons for Appellant's termination. As the District Court properly found, "[r]ather, these documents demonstrate the efforts by the [Appellee] to remove the [Appellant] from job locations where she has perceived harassment and place her in an environment where she does not perceive such harassment." [Dkt. 78, p. 17] Further, none of these statements were made in the context of Appellant's termination. Indeed, each of the documents identified by Appellant as direct evidence of retaliation predated Fripp's termination from the City by more than a year. [Dkt. 70-8 p.2; Dkt. 70-10, p.1; Dkt. 70-29, pp.1-2]

In summary, Appellant's proffered emails are not direct evidence of retaliation. Thus, the District Court did not err in determining that Appellant failed to present any direct evidence of Title VII retaliation as a matter of law.

**B.**    **APPELLEE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE FRIPP HAS NOT ESTABLISHED A PRIMA FACIE CASE OF RETALIATION.**

Appellant argues that the District Court erred in granting summary judgment on her retaliation claim because she produced circumstantial evidence of Title VII retaliation.  [Br. of Appellant, p. 31]   When an employee relies on circumstantial evidence to demonstrate retaliation under Title VII, the Court applies the burden shifting framework explained in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Lewis v. Blue Bird Corp.*, 835 F. App'x. 526, 528-29 (11th Cir. 2020). "Under this framework, if the plaintiff presents a *prima facie* case, and the employer presents a legitimate, nonretaliatory reason for its decision, the plaintiff must then show that the employer's proffered reasons were pretextual." *Id.*

To establish a prima facie case of retaliation, an employee must show that (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) there is some causal connection between the two events.  *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1337 (11th Cir. 2023) (citing *Little v. United Techs.*, 103 F.3d 956, 959 (11th Cir. 1997)). Only the second and third elements are at issue in Appellant's case.

As to the second element, an adverse action is only actionable if it would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006).

22

Federal courts are not super-personnel departments, and plaintiffs must demonstrate more than "trivial harms" like "petty slights or minor annoyances that often take place at work and that all employees experience." *Id.*

To prove a causal connection, an employee must "generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action." *Raney v. Vinson Guard Serv.*, 120 F.3d 1192, 1197 (11th Cir. 1997). And the temporal proximity between the employer's discovery of the protected activity and the adverse action must be "very close." *Lewis*, 835 F. App'x. at 529. "A three-to-four-month delay is too long." *Id.*

### 1. Fripp's allegations of adverse actions other than her termination are insufficient as a matter of law to support a claim of Title VII retaliation.

Aside from her termination, Appellant has not and cannot produce evidence of any actionable adverse actions sufficient to sustain a Title VII retaliation claim. Appellant argues – without any citation to record evidence or supporting authority – that "her supervisor's refusal to assign her to light duty work" and "the City's interference with her workers' compensation claim" are adverse actions upon which she rests her retaliation claim. [Br. of Appellant, p. 33] However, the Magistrate and District Courts expressly rejected that the alleged refusal to assign Appellant light duty work and purported interference with a workers' compensation claim are actionable adverse actions under Title VII. [Dkt. 75, pp. 29-32]; [Dkt. 78, p.18 n.1]

As the District Court explained, Appellant's own testimony that she never requested a light duty assignment and was never denied such an assignment defeats any claim that the purported refusal to assign her light duty was an actionable adverse action. [Dkt. 66-1, Fripp Dep. 138:8-21, 141:3-6, 142:1-2]

Appellant cites to a litany of emails purportedly showing that Appellee refused to accommodate Appellant with light duty work on isolated occasions that occurred more than two years prior to her termination from the City. [Br. of Appellant, p. 35] But none of those emails show that Appellant requested and was ever refused light duty. Rather, the record evidence demonstrates that Fripp never asked for any accommodation of light duty. [Dkt. 66-1, Fripp. Dep. 138:8-21] Further, Plaintiff concedes that the City accommodated her with light duty when she returned to work following a surgery. [Dkt. 66-1, Fripp Dep. 138:21-139:9] And Plaintiff cannot recall a time where she requested light duty and was refused light duty. [Dkt. 66-1, Fripp Dep. 141:3-6, 142:1-2] Because Plaintiff admits that she never requested and was never refused light duty, Plaintiff's allegations are not adverse employment actions sufficient to support a claim of retaliation.

Likewise, Appellant's brief fails to point to any evidence rebutting the District Court's finding that there was no evidence that Appellee interfered with Fripp's workers' compensation claim. *See generally* [Br. of Appellant, pp. 35-36]; [Dkt. 78, p.18 n.1] Appellant appears to hang the entirety of her claim that she

suffered an adverse employment action on the allegation that Appellee purportedly interfered with her workers' compensation claim by requiring her to submit to a fitness for duty exam. [Br. of Appellant, p. 36] Interestingly, Appellant's brief does not even begin to explain how requiring Fripp to complete a fitness for duty exam had any bearing on her workers' compensation claim or caused any changes to her workers' compensation benefits. That is because she cannot. Appellant's brief is also devoid of any caselaw supporting the assertion that requiring Appellant to submit for a fitness for duty examination is an actionable adverse action under Title VII (particularly in the absence of any evidence that such action would have dissuaded an employee from exercising her rights under Title VII).

Further, to the extent Appellant argues that Appellee interfered with her workers' compensation claim when workers' compensation physician Dr. York revised her work status from light duty to being able to return to work without restrictions, Appellant's contentions are wholly without merit. In 2019, Fripp had no work restrictions, but showed up to work wearing a leg brace and using a cane. [Dkt. 67-1, Allen Smith Dep. 51:20-52:6; Dkt. 65-48, COA_FRIPP000160; COA_FRIPP000779-780] It is because of Fripp's use of a leg brace and cane despite having *no* medical work restrictions in December 2019 that Appellee determined that Fripp needed to complete a fitness for duty assessment. [Dkt. 67-1, Allen Smith Dep 51:20-52:6; Dkt. 66-17, COA_FRIPP000721 (Fripp. Dep. Ex. 17); Dkt. 65-49,

FOA_FRIPP000180; COA_FRIPP000816-817].    After a January 8, 2020 visit, Fripp's workers' compensation physician issued a note stating that Fripp could "return to work 1/9/20 without restrictions." [Dkt. 65-48, COA_FRIPP000779-803; COA_FRIPP000854].    Notwithstanding, Appellant fails to articulate any way in which Dr. York's actions – or Appellee's for that matter – had any impact on her workers' compensation claim.    Appellant fails to point to any record evidence or precedent demonstrating that the District Court erred in granting summary judgment on her Title VII retaliation claim.    Appellant's unsubstantiated allegations that Appellee denied her light duty and interfered with her workers' compensation claim are insufficient as a matter of law to overcome Appellee's motion for summary judgment.

### 2.    Fripp wholly fails to establish any causal connection between her purported protected activity and her termination.

Appellant complains that the District Court erred in determining that she failed to establish a causal connection between her protected activity and the sole adverse employment action she suffered – her termination.  [Br. of Appellant, p. 37] In conclusory fashion, Appellant argues that two things show causation between Fripp's protected activity and her termination: (1) the statements of Allen Smith and two individuals who indisputably had no involvement in the decision to terminate Fripp's employment – Maya Smith and Nia Parker, and (2) "temporal proximity between [Fripp's] January 2020 sexual harassment complaint and the decision to

terminate [Fripp]." *Id.* However, Appellant's brief lacks citation to any record evidence or caselaw supporting her contention.

"To establish a causal connection, [an employee] must show that the relevant decisionmakers were 'aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated.'" *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013) (quoting *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002)). "[An employee] may be able to rely solely on the temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality," so long as the proximity is "very close," usually less than two months. *Ramirez v. Bausch & Lomb, Inc.*, 546 F. App'x 829, 832 (11th Cir. 2013) (citing *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)). Here, Appellant has not and cannot meet her burden of production with respect to the causation element of her Title VII retaliation claim.

Over the span of three pages, Appellant summarizes a series of emails involving Allen Smith, Maya Smith, Nia Parker, and some other City employees and non-City employees. *See generally* [Br. of Appellant, pp. 37-39] But Appellant fails to explain – explicitly or implicitly – ***how*** any of these emails demonstrate a causal connection between Appellant's January 2020 sexual harassment complaint and her termination. *See id.* Moreover, Appellant fails to dispute that there is a

fifteen-month gap between her filing of an employee grievance alleging sexual harassment in January 2020 and her termination in April 2021.  [Dkt. 67-4, Allen Smith Dep. Ex. 3; Dkt. 66-17, Fripp. Dep. Ex. 17; Dkt. 67-1, A. Smith Dep. 61:14-62:3, 64:20-24, 70:23-71:23].[2]  Such a gap is far too attenuated to constitute temporal proximity sufficient to establish causation on Appellant's Title VII retaliation claim. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d at 1364.

Appellant also appears to argue that she has established causation on her Title VII retaliation claim because a draft March 25, 2020 Notice of Proposed Adverse Action "was in close proximity to [Fripp's] January 2, 2020 written complaint about Derek Ponder sexually harassing her."  [Br. of Appellant, pp. 39-40]  As an initial matter, Appellant cites to no record evidence or legal precedent establishing that a *draft* Notice of Proposed Adverse Action purportedly prepared in March 2020 – more than a year prior to Appellant's termination – is an actionable adverse action under Title VII.  And even assuming arguendo that March 25, 2020 – the date that Allen Smith drafted a notice of proposed adverse action for Fripp's dismissal – was the date on which he finally decided that Fripp would be terminated, there is still no

---

[2] Significantly, the Magistrate Judge observed that the fifteen-month gap between Appellant's January 2020 complaint and her April 2021 termination was due to the City's Office of Employee and Labor Relations' determination that "[Fripp's] January 2020 harassment complaint needed to be resolved before [Appellee] could end her employment.  Put differently, the evidence of record demonstrates that [Fripp's] January 2020 complaint of sexual harassment merely served to extend her employment, resulting in her receiving more favorable treatment than she would have otherwise received."  [Dkt. 75, pp. 36-37 n.20.]

causal connection because March 25 post-dates Fripp's January 2, 2020 complaint by well over two months, and, therefore, remains too remote in time to support an inference of retaliatory intent without more. *Williams v. Waste Mgmt., Inc.*, 411 F. App'x 226, 230 (11th Cir. 2011) (concluding that a "two-month gap may be 'closer' in time, but it is not 'very close'" as required to support a causal inference alone). In any event, Appellant failed to raise this argument in her response to Appellee's motion for summary judgment [Dkt. 71-1], and it cannot now be considered for the first time on appeal. *See Hurley v. Moore*, 233 F.3d 1295, 1297 (11th Cir. 2000) ("Arguments raised for the first time on appeal are not properly before this Court.").

In apparent acknowledgement of the fact that the lack of temporal proximity between her January 2020 complaint and April 2021 termination dooms her Title VII retaliation claim, Appellant argues an adverse action "can be linked to temporally distant protected expression if there is a chain of intervening retaliatory acts between the two." [Br. of Appellant, p. 40] In support of this contention, Appellant cites *Bass v. Bd of Cnty. Comm'rs, Orange Cnty., Fla.*, 256 F.3d 1095, 1117 (11th Cir. 2001). But *Bass* makes no such holding, and is thus, inapposite to the instant case. Notwithstanding the foregoing, Appellant fails to identify any of the "intervening retaliatory acts" causally connecting her January 2020 complaint to her April 2021 termination. *See generally* [Br. of Appellant, p. 40]

Moreover, Appellant failed to raise any argument regarding intervening retaliatory acts with the district court [Dkt. 71-1] and should not now be permitted raise such arguments for the first time on appeal to save her from summary judgment. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("This Court has 'repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court.'"). The Eleventh Circuit has articulated that the reason for this prohibition is plain: if the Court "were to regularly address questions – particularly fact-bound issues – that district courts never had a chance to examine, [the court] would not only waste our resources, but also deviate from the essential nature, purpose, and competence of an appellate court." *Id.* Accordingly, this Court should reject Appellant's newly asserted arguments.

## C. APPELLEE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF CANNOT ESTABLISH PRETEXT.

Where an employee first establishes a prima facie case of retaliation, "the burden then shifts to the employer to articulate a legitimate, non-retaliatory reason for the challenged adverse action." *Tyler v. Kia Motors Mfg. Ga., Inc.*, 702 F. App'x. 945, 949 (11th Cir. July 12, 2017) (citing *McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008)). Under the *McDonnell Douglas* burden-shifting framework, once the employee presents a prima facie case of retaliation, and the employer presents a legitimate, non-retaliatory reason for its decision, the employee must then show that

the employer's proffered reason was pretextual. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973). To show pretext, Appellant must show that Appellee's reasons are false '*and* that discrimination was the real reason.'" *Lewis*, 835 F. App'x. at 540 (emphasis in original). Where, as here, an employer provides several legitimate reasons, Appellant "must rebut each of the reasons to survive a motion for summary judgment." *Chapman v. AI Transp.*, 229 F.3d 1012, 1037 (11th Cir. 2000) (en banc). To do so, Appellant "needs to demonstrate 'such weaknesses…or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *See McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008). Appellant must do more than just quarrel with the wisdom of the decision; "[t]o survive summary judgment, the [employee] must . . . present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext. Mere conclusory allegations and assertions will not suffice." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). At all times, Appellant retains the ultimate burden of persuading the finder of fact that the employer acted with retaliatory intent. *Texas Dep't of Cmty. Affairs v. Burden*, 450 U.S. 248, 253 (1981). Here, Appellant fails to satisfy that burden.

Appellant was terminated for (1) "failure to carry out an official directive or refusal to carry out the lawful, reasonable directions given by a superior or other acts

of insubordination," in violation of City of Atlanta Code of Ordinances Section 114-528(b)(3); (2) "absence without official leave," in violation of City of Atlanta Code of Ordinances Section 114-528(b)(8); and (3) "the refusal, when so directed, to be examined by a licensed physician designated by the City," in violation of City of Atlanta Code of Ordinances Section 114-528(b)(16).  [Dkt. 66-17, Fripp Dep. Ex. 17]  Appellant argues that the District Court erred in granting summary judgment in favor of Appellee because "[Appellee's] proffered reasons for its adverse actions are invalid" and pretextual.  [Br. of Appellant, pp. 41, 45]  Specifically, Appellant contends that (1) Fripp's failure to attend a fitness for duty examination cannot be a valid reason for termination because Allen Smith did not have authorization to order a fitness for duty exam, and (2) Appellant's absence without leave and failure to return FMLA paperwork cannot be a valid reason for termination because the City's policies concerning annual leave and sick leave do not require FMLA approval.  [Br. of Appellant, pp. 41-44] But both of Appellant's contentions are without foundation.

In support of her argument that Allen Smith was not authorized to require that Appellant sit for a fitness for duty exam, Appellant states that City of Atlanta Ordinance Section 114-380 provides that "The head of the department with the approval of the commissioner of human resources, shall have the right to direct any employee within such department to be examined by a physician or psychologist to be designated by the city."  [Br. of Appellant, p. 41]  Appellant argues that Allen

Smith was not the head of a department and did not seek permission of the commissioner of Human Resources regarding Appellant's fitness for duty examination; therefore, Fripp's failure to attend a fitness for duty examination cannot be a valid reason for her termination. *Id.* However, Appellant's claim is ***not*** for a violation of the Atlanta Municipal Ordinance. And even assuming arguendo that Allen Smith lacked specific authority to require that Appellant submit to a fitness for duty examination, Appellant points to no record evidence showing that Allen Smith did not honestly believe he could require an examination and discipline Appellant for refusing to submit to an examination. *See* [Br. of Appellant, p. 41] Importantly, "the mere fact that an employer was mistaken about the facts upon which the challenged employment decision was based does not establish pretext" for retaliatory motive. *Jones v. RS & H, Inc.*, 775 F. App'x 978, 988 (11th Cir. 2019). Despite Appellant's arguments, the Court's "inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010). Accordingly, even if Allen Smith and Maya Smith were mistaken about the authority to direct Appellant to take a fitness for duty exam, Appellant points to no evidence demonstrating that retaliatory animus was the real reason.

Appellant also argues that her absence without leave and failure to return

FMLA paperwork cannot be a valid reason for termination because the City's ordinances concerning annual leave and sick leave do not require FMLA approval. [Br. of Appellant, p. 43]  However, Appellant's brief fails to cite to any language in such ordinances precluding Appellee from implementing policies that require employees to apply for FMLA leave when they are out of work for extended periods of time.  Rather, the record evidence shows that Fripp did not report to work from December 2020 through March 2021 and submitted no documentation to the City regarding her absence from work. [Dkt. 67-1, Allen Smith Dep. 61:13-24].  On March 5, 2021, Allen Smith sent Fripp a memo outlining her accrued leave and stating that Fripp would need to communicate with the City regarding her ability to return to work no later than March 11, 2021; the memo also stated that Fripp would need to contact the City to request an accommodation, if needed.  [Dkt. 67-16, Allen Smith Dep. Ex. 15; Dkt. 67-1, A. Smith Dep. 67:19-68:4] Fripp submitted a physician's note on March 8, 2021 stating that she should be placed on medical leave from January 14, 2021 through July 1, 2021; however, Fripp did not contact the City or anyone in the Human Resources Department to request an additional 120 days of leave.  [Dkt. 67-1, A. Smith Dep. 72:7-11, 72:18-73:19; Dkt. 68-12, Hicks Dep. Ex. P-11] To protect her job, if eligible, Fripp would have needed to apply for and be approved for FMLA leave to be absent from work from January 2021 through July 2021.  [Dkt. 68-1, Hicks Dep. 23:5-25, 24:3-19]  The City provided Plaintiff with

FMLA paperwork. [Dkt. 66-1, Fripp Dep. 150:24-151:2; Dkt. 70-1, M. Smith Dep. 65:16-66:1, Dkt. 65-59, COA_FRIPP001617-1627].  But Fripp never applied for FMLA leave or asked for any accommodation for her work.  [Dkt. 66-1, Fripp Dep. 151:3-6, 152:21-153:7; Dkt. 70-1, M. Smith Dep. 65:20-66:1].

Fripp has not and cannot point to any record evidence showing that her absence without leave and failure to complete FMLA paperwork to protect her job status were not the real reasons for her termination.  Thus, the District Court did not err in granting summary judgment on her Title VII retaliation claim in favor of Appellee.

In a last-ditch attempt to save her pretext argument, Appellant contends that the District Court erred in granting summary judgment in favor of Appellee because one of the legitimate, nonretaliatory reasons for her termination – Appellant's failure to return FMLA paperwork – arose after Appellee made the decision to terminate her employment.  [Br. of Appellant, pp. 44, 50]

Appellant relies upon *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057 (11th Cir. 1994) and *Tebo v. City of Debary*, 784 Fed. Appx. 727 (11th Cir. 2019) for the proposition that a legitimate, non-retaliatory reason for termination is pretextual when the reason is offered post-termination.  However, Appellant's reliance upon these cases is misplaced.  In *Turnes*, the Eleventh Circuit held that an employer may not satisfy the burden of production to offer a legitimate, non-discriminatory reason

for termination in a Title VII case "by offering a justification which the employer either did not know or did not consider at the time the decision was made." 36 F.3d at 1061. There, the employer posited the appellant's credit history as the legitimate, nondiscriminatory reason for not hiring appellant when the evidence showed that a credit check was not completed until after the appellant was rejected from the job and after he filed an EEOC charge. *Id.* at 1059.

*Turnes* is distinguishable from the instant case. Appellant argues one of the legitimate, non-retaliatory retaliatory reasons for her termination – her  failure to return FMLA paperwork – is pretextual because it arose after the decision to terminate her had been made. [Br. of Appellant, pp. 44, 51] But that is simply not true. Appellee sent Appellant FMLA paperwork on January 29, 2021. [Dkt. 65-59, p.5] Appellant never returned the FMLA paperwork. [Dkt. 66-1, Fripp Dep. 151:3-6, 152:21-153:7; Dkt. 67-1, A. Smith Dep. 66:20-67:12] Appellee did not issue the Notice of Proposed Adverse Action regarding Appellant's termination until April 8, 2021. [Dkt. 65-61, pp.4-5] Thus, *Turnes* is inapposite to this case.

Likewise, *Tebo v. City of Debary* is also distinguishable from the instant case. There, the legitimate, nonretaliatory reasons proffered for appellant's termination occurred within days of appellant filing an EEOC charge; the court determined there was pretext because of the short temporal proximity between appellant's protected activity and her termination – one month. *Tebo*, 784 F. App'x. at 731-32. Unlike in

*Tebo*, in this case, the proffered reasons for Appellant's termination occurred prior to the City's issuance of the Notice of Proposed Adverse Action. Further, Appellant has not disputed and cannot dispute that there is a fifteen-month gap between her filing of an employee grievance alleging sexual harassment in January 2020 and her termination in April 2021. [Dkt. 67-4. A. Smith Dep. Ex. 3; Dkt. 66-17, Fripp Dep. Ex. 17; Dkt. 67-1, A. Smith Dep. 61:13-62:3, 64:20-24, 70:23-71:23].

In any event, Appellant fails to provide any argument that Appellee's decision to terminate Appellant for unauthorized leave of absence from December 2020 through March 2021 was not the real reason for her termination. To establish pretext, Appellant cannot simply quarrel with one of the reasons for her termination. She must address each proffered reason head-on and rebut it. Appellant has not done so, and the District Court did not err in granting summary judgment in favor of Appellee.

Appellant seems to imply that the reasons for Appellant's termination are pretextual because of shifting explanations regarding the reasons for Appellant's termination. [Br. of Appellant, p. 45] In support of this argument, Appellant cites deposition testimony from Deshonda Howard, an employee in the City's Department of Watershed Management, regarding her opinion on whether an employee receiving workers' compensation benefits should be scheduled for a fitness for duty examination. [Dkt. 73-1, Howard Dep. 28:15-29:14] Significantly, Appellant makes

37

no argument whatsoever regarding how an opinion of an employee who never supervised Fripp and had no role in Fripp's termination demonstrates that the reasons for Appellant's termination were pretextual. Further, such an opinion by someone who was not the decisionmaker regarding Fripp's termination is not a *reason* for Appellant's termination – much less a shifting or inconsistent one.

Finally, Appellant argues that the reasons for Appellant's termination are pretextual because "[r]etaliation was the real reason for the scheduling of the fitness for duty exam." [Br. of Appellant, p. 47] Plaintiff recycles nearly all of the text set forth earlier in her brief under the section regarding her purported direct evidence of Title VII retaliation, spilling nearly nine pages of ink copying and pasting emails and testimony with no coherent argument and no supporting caselaw. [Br. of Appellant, pp. 47-53] Appellant's uncorroborated speculation and conjecture that "retaliation was the real reason" for her termination cannot save her appeal. And this Court should not be tasked to decipher Appellant's copy-and-paste job, without the legal precedent, to construct legal argument for Appellant. *See, e.g., Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 735 F. Supp. 2d 856, 865 (N.D. Ill. 2010) ("It is reasonable to assume that just as a district court is not required to 'scour the record looking for factual disputes,' it is not required to scour the party's various submissions to piece together appropriate arguments. A court need not make the lawyer's case."). Because Appellant has presented no coherent legal argument or

record evidence to the contrary, the District Court did not err in finding that Appellant failed to demonstrate that the reasons for her termination were pretextual.

## <u>CONCLUSION</u>

For the reasons articulated herein, Appellant respectfully requests that the Court affirm the District Court's grant of summary judgment in favor of Appellee.

Respectfully submitted this 21st of February, 2024.

*/s/ Mellori E. Lumpkin-Dawson*
Mellori E. Lumpkin-Dawson
Ga. Bar No. 358937

**GREENBERG TRAURIG, LLP**
Terminus 200, Suite 2500
3333 Piedmont Road, N.E.
Atlanta, Georgia  30305
(678) 553-2415
*Attorney for Appellee*

## <u>CERTIFICATE OF COMPLIANCE</u>

I HEREBY CERTIFY that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 9, 282 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font in Times New Roman type style.

/s/ *Mellori E. Lumpkin-Dawson*
Attorney for Defendant/Appellee

40

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY certify that I electronically filed the foregoing BRIEF OF APPELLEE with the Clerk of Court using the CM/ECF system which will automatically send electronic notification of such filing to the following counsel of record:

Kennon Peebles, Jr.
Kennon Peebles, Jr., Attorney at Law
3296 Summit Ridge Pkwy, Suite 1720
Duluth, GA 30096
Tel: 678-232-1533
Fax: 678-261-0904
Email: kennon@peebleslaw.net

This 21st day of February, 2024.

/s/ *Mellori E. Lumpkin-Dawson*
Attorney for Defendant/Appellee

*ACTIVE 693300760v5*